## UNITED STATES v. RICHMOND.

(Circuit Court of Appeals, Third Circuit. January 13, 1927.)

No. 3290.

1. Aliens ☞71½(3)—Government, in proper case, can sue to cancel certificate of citizenship on ground of fraud, or that certificate was illegally procured (Comp. St. § 4374).

The government, in proper case, may bring suit under Act June 29, 1906, § 15 (Comp. St. § 4374), for cancellation of certificate of citizenship on ground of fraud, or that certificate was illegally procured.

2. Aliens ☞71½(3)—Certificate of citizenship held not "illegally procured," and subject to cancellation, because judge left room during proceedings (Comp. St. §§ 4368, 4370, 4374).

Certificate of citizenship, issued pursuant to order in accordance with Act June 29, 1906, § 9 (Comp. St. § 4368), after appearance by the government under section 11 (Comp. St. § 4370), not illegally procured, within meaning of section 15 (Comp. St. § 4374), so as to authorize suit for cancellation thereof, because of fact that judge left courtroom during proceedings, during which time proof was made before clerk, since words "illegally procured," as used in the act, must be taken in their commonly understood meaning as evidencing positive, affirmative act on part of procurer.

3. Aliens ☞71½(3)—Government's affidavit, in suit to cancel certificate of citizenship presenting questions not raised during naturalization proceedings, fails to state "good cause" (Comp. St. §§ 4370, 4374).

Where government, participating in naturalization proceedings in accordance with Act June 29, 1906, § 11 (Comp. St. § 4370), failed at such time to raise question of irregularity of judge leaving room, its subsequent affidavit under section 15 (Comp. St. § 4374) in proceeding to cancel certificate does not show "good cause" required therein.

4. United States ☞133—Laches is not chargeable to sovereign.

Laches cannot be charged against the sovereign.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Proceeding by the United States against Richmond Nisbet Richmond to cancel defendant's certificate of naturalization. Decree for defendant, and the United States appeals. Affirmed.

George W. Coles, of Philadelphia, Pa., for the United States.

James C. Crumlish, of Philadelphia, Pa., for appellee.

Adrian Bonnelly, of Philadelphia, Pa., amicus curiæ.

Before BUFFINGTON and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

BUFFINGTON, Circuit Judge. This case concerns the United States citizenship of Richmond Nisbet Richmond. The facts are that he, together with several hundred others in like situation, and against whom, as stated at the argument, this is a test case and like proceedings will be taken, had, in due course, appeared before the officials of the Naturalization Bureau of the United States at Philadelphia, had complied with all the requirements of law in regard to witnesses, had given the customary notice, and had satisfied these officials of his character, fitness, and qualifications to become a citizen of the United States. Thereupon he, with the others, was brought by the said officials before a regular session of the United States District Court, duly convened in and for the Eastern District of Pennsylvania, and was, in accordance with the usual custom, recommended to the court by said officials as qualified for citizenship. Where the examiners thus recommend applications, the practice of the judges was to accept such recommendation and confine the court's action to a few formal questions by the clerk, showing residence, production of witnesses, and the administration of the oath of allegiance. The court's action in Richmond's Case, as it appears of record, was:

"In the Matter of the Petition of Richmond Nisbet Richmond to be Admitted to Citizenship.

"Order of Court Admitting Petitioner.

"Upon consideration of the petition of Richmond Nisbet Richmond, and affidavits in support thereof, and further testimony taken in open court, it is ordered that the said petitioner, who has taken the oath required by law, be, and hereby is, admitted to become a citizen of the United States of America this 7th day of December, A. D. 1922.

"By the Court:

"O. B. Dickinson, Judge,"

—which record complied with the requirement of section 9 of the Act of June 29, 1906 (Comp. St. § 4368), that "every final order which may be made upon such petition shall be under the hand of the court and entered in full upon a record kept for that purpose."

Pursuant thereto, a certificate of naturalization as provided by law was issued by the Naturalization Bureau to Richmond, under the seal of said court, on December 7, 1922. By section 11 of that act (Comp. St. § 4370) the government was given the right, which it exercised in this case, of appearing in such case and of being "heard in opposition to the

granting of any petition in naturalization proceedings." During the current term the United States made no application to vacate said decree, nor did it take the appeal to this court to which—see Tutun v. United States, 270 U. S. 568, 46 S. Ct. 425, 70 L. Ed. 738—it was entitled. It would seem, therefore, that in the absence of fraud this record, being perfect on its face, became as between the parties thereto, namely, Richmond and the United States, a final judgment, which neither of them could thereafter collaterally question, or, to quote Chief Justice Marshall, in Spratt v. Spratt, 4 Pet. 407, 7 L. Ed. 897:

"The various acts upon the subject submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry, and, like every other judgment, to be complete evidence of its own validity. The inconvenience which might arise from this principle has been pressed upon the court. But the inconvenience might be still greater, if the opposite opinion be established. It might be productive of great mischief if, after the acquisition of property, on the faith of his certificate, an individual might be exposed to the disabilities of an alien, on account of an error in the court, not apparent on the record of his admission. We are all of opinion that James Spratt became a citizen of the United States on the 11th of October, 1821."

Standing thus unrevoked and unappealed from, and disclosing no irregularity or lack of jurisdiction on its face, this judgment stands as binding, conclusive, and final upon the parties thereto, unless there is some statutory authority for questioning its validity and finality in some other proceeding. Such warrant the United States asserts by virtue of section 15 of the Act of June 29, 1906 (Comp. St. § 4374), which provides:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

Accordingly, some eight months after entry of this decree, the government, in an in-dependent proceeding against Richmond, filed a petition to cancel his certificate of naturalization.

[1] It is clear that under such statute the government can, in a case within the purview of the act, have such cumulative remedy, and such relief has been had where, as in United States v. Ness, 245 U. S. 320, 38 S. Ct. 118, 62 L. Ed. 321, the applicant did not, on entering the country, register as required by statute, and where he did not accompany his application for naturalization with a certificate of registration; so also where, as in the case of Ginsberg v. United States, 243 U. S. 273, 37 S. Ct. 422, 61 L. Ed. 853, the applicant had never appeared in court and no court had taken action upon his case; and likewise where, as in the case of Johannessen v. United States, 225 U. S. 232, 32 S. Ct. 613, 56 L. Ed. 1066, the applicant had not been 5 years in the country. In each instance it will thus appear the certificate was illegally procured, for in two cases the applicants had perpetrated a fraud on the court, and in the other no court had ever convened or considered the applicant's case, and in all cases the applicants were not qualified to become citizens.

[2] Here, however, we have a wholly different state of facts, in that Richmond, the applicant, has met the full statutory requirements of the statute as to character, residence, witnesses, and the like, and there is no act of commission or omission, bad faith, or fraud on his part. The utmost that can be said is that some time, between the due opening of the court by the judge and its due adjournment by him, Judge Dickinson left the courtroom and was holding the same court in an adjoining room, and that during that time Richmond and his witnesses made their proofs before the clerk. But this action of the judge, in leaving the bench in the face of the statute requirement that "upon such final hearing of such petition the applicant and witnesses shall be examined before the court and in the presence of the court," was in no way procured or brought about by Richmond. He produced his witnesses; he made the statutory proofs which, it is conceded, qualified him for citizenship; and in doing so he obediently did what the naturalization officers of the government and the clerk of the court directed him to do. He had no part in permitting the clerk to perform any act which the statute imposed on the judge. He had no part in the judge being in the adjoining room while his examination was proceeding. He took no part when, later, the record of his naturalization

was made up and signed by the judge. In good faith he paid the naturalization fees, which the government still retains, and in like good faith duly received the certificate of naturalization made out and delivered to him by the government, acting by its naturalization officers.

We here remark that we are in no way overlooking or palliating what the judge did, or approving of his omission to follow the statute, whose provisions are as above quoted; but we deem it to be due him to say that what was done on this particular day was exceptional, and occasioned by the conflicting calls of duty, due to the fact that these naturalization applications and a case which brought parties and witnesses from a distance were mistakenly listed for the same day. Confronted by this situation, the judge went to the other courtroom to hear the case, holding himself ready to return to the naturalization court, should question arise necessitating decision by him, none of which arose in the Richmond Case, as his qualifications are not now, and could not then have been, controverted. Under these facts the question arises: Was this a case for cancellation under section 15 of the Act of June 29, 1906, which "upon affiant showing good cause therefor" gives such cumulative remedy "for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

In considering that question, we first note that fraud is not here involved, and that Richmond was qualified to be lawfully adjudged a citizen, so that we may dismiss from consideration the first ground specified in the statute, namely, "on the ground of fraud," and confine ourselves to the second ground, namely, "on the ground that such certificate of citizenship was illegally procured." Under this clause we inquire: Procured by whom? Certainly not by the government, and no such illegal procurement by it is contended for; therefore, if there was an illegal procurement, manifestly it must have been Richmond's work or act.

Now to the words "procured," "illegally procured," coupled in this statute with fraud, as it is, must be attributed the purpose of Congress to use those words in their commonly understood meaning, as evidencing a positive, affirmative act on the part of the procurer, and one of a sinister character. Thus in 4 Blackstone, pp. 137, 138, "subornation of perjury is the offense of procuring another to take a false oath," etc. Murray's Dictionary: "To contrive or devise with care (an action or proceeding); to endeavor to cause or bring about (mostly something evil) to or for a person." The Century Dictionary defines procurer as "one who uses means to bring anything about, especially one who does so secretly and corruptly." 3 Bouvier's Dictionary, 2733, says: "To contrive, effect, or bring about; to cause;" and says there is a clear legal distinction between "procuring an act to be done and suffering it to be done."

And that these words meant something sinister, and the purpose of Congress to so use them, is evidenced by the legal authorities where, for example, in 2 Corpus Juris, 1126, commenting on the act, it is said: "While there is some difference of opinion as to the meaning of the term 'illegally procured,' the better rule seems to be that it imports a certificate issued without authority of law, and, in effect, false and spurious; not an error of law, but subornation, or some other illegal means, to impose on the court." Did Congress mean these words to apply to a case where there was no fraud, no improper or illegal act done by the applicant; to a situation where protection against irregularity was already fully provided for by the government's right to appear, and, if wronged, to appeal; to a case where an applicant was, as Richmond admittedly was, both by the actual proofs and the testimony of himself and witnesses, qualified for citizenship, and where the alleged ground of cancellation was not anything done or procured by the applicant, but wholly the act and possible error of the judge?

That the element of a wrongful act of the applicant is the offending element contemplated by the act is indicated in Johannessen v. United States, 225 U. S. 227–242, 32 S. Ct. 613, 617 (56 L. Ed. 1066), where it is said: "It [the act] merely provides that, on *good cause* shown, the question whether one who claims the privileges of citizenship under the certificate of a court has *procured that certificate through fraud or other illegal contrivance* shall be examined and determined in orderly judicial proceedings. The act makes nothing fraudulent or unlawful that was honest and lawful when it was done. It imposes no new penalty upon the wrongdoer. But if, after fair hearing, it is judicially determined that by *wrongful conduct* he has obtained a title to citizenship, the act provides that he shall be deprived of a *privilege that was never rightfully his.*"

In United States v. Ness, 245 U. S. 320, 38 S. Ct. 118, 62 L. Ed. 321, the issue of the certificate was brought about and procured

by the illegal act of the applicant. He entered the country illegally, in that he did not register, and did not, as the statute provides, procure "a certificate of such registry with the particulars thereof." He presented to the state court his petition for naturalization, unaccompanied by such certificate, while section 27 of the regulation provided by the act to be issued provides that such petition shall state that "attached hereto and made a part of this petition" is "the certificate from the Department [of Commerce and] Labor required by law." The petition was objected to by the representatives of the government, but the applicant persisted, and the court proceeded to adjudge him a citizen, when he could not legally be so adjudged, and thereafter to issue its certificate to him.

In the present case there exist none of the affirmative unlawful acts of Ness—unwarranted entry into the country without registry; failure to obtain a certificate; wrongful presentation of a petition to naturalize, unaccompanied by certificate; prosecution of this unlawful petition when objected to by the representatives of the government; positive wrongful acts on his part, which made his certificate one "unlawfully procured.". In United States v. Ginsberg, 243 U. S. 473, 37 S. Ct. 422, 61 L. Ed. 853, the applicant appeared and purported to be naturalized at a time and place where no court was held and where, in addition, as stated by the court, "the uncontradicted evidence at the hearing of the petition showed indisputably that the petitioner was not qualified by residence for citizenship." In Johannessen v. United States, supra, the applicant had procured his certificate by self-confessed perjury and had not resided in the United States five years.

In the absence of any authoritative and controlling decision otherwise construing the term "illegally procured," we incline to the view that the decree of the court in this case —mistakenly made, as it possibly was—was not "illegally procured," within the meaning of this statute, but was an irregularity in procedure, correctible on appeal, and presented a situation the statute was not meant to cover. Bearing on that question, we note that the United States, by virtue of section 11 of the act of 1906, was, by its representative, the naturalization officer, represented and in court when Richmond's petition was heard; that by that statute it was given the right to "be heard in opposition to the granting of any petition in naturalization"; that it knew of the decree which was entered by the judge, and in pursuance of such de-

cree, and reciting it as its ground for doing so, it subsequently, by its Naturalization Bureau, issued to Richmond his and its certificate on such decree.

The United States being present, and therefore a party, with a litigant's rights in this naturalization proceeding, had the right to object to any error or irregularity, and, if dissatisfied with the decree, to appeal therefrom. We note here there are no after-discovered facts. All that was done when Richmond's petition was before the court, or omitted to be done, was then and there known to the United States, and no objection made thereto. Why this course of silent acquiescence was then pursued by the government is not shown or explained, though the wisdom of then and there raising the objections to procedure now made had already been pointed out by the Supreme Court in United States v. Ness, supra, where it was said: "An independent suit necessarily involves considerable delay and expense, and it may subject the individual to great hardship. On the other hand, a contest in the court of naturalization is usually disposed of expeditiously and with little expense. The interest of all concerned is advanced by encouraging the presentation of known objections to naturalization at the earliest possible stage of the proceedings; so that the petitioner may, if the defects are remediable, remove them, and, if not, may adopt, without delay, such course, if any, as will ultimately entitle him to citizenship." The application of this wholesome procedure in accordance with the court's above suggestion to the then situation is clear. The court had been opened, the clerk was present examining the parties, the judge was in the adjoining room, ready to return if any question arose, and a timely request for his presence would have insured his return to hear any question or objection.

Moreover, the question arises: Was the interim absence of the judge, during the session when Richmond and his witnesses were examined, more than an irregularity in procedure? Did Richmond thereby obtain a naturalization decree which was voidable and correctible on review for irregularity, or was the session so absolutely void, by reason of the temporary withdrawal, but potential presence of the judge as made Richmond "illegally procure" his certificate of naturalization? The temporary absence of the judge during court sessions, in civil cases, has been the subject of review in many cases, not as a matter of unlawfulness, but as one of irregularity of procedure. See cases cited in

38 Cyc. 1298; 21 Encyc. of Pleading and Practice, 977; 26 Ruling Case Law, 1014.

Without discussing these cases, or attempting to say what would have been held by this court in that regard, had the decree entered by Judge Dickinson and quoted above been brought before this court for review, we are of opinion that, in view of the fact that the court was duly and publicly opened by the judge, that during its entire session the clerk was in attendance, publicly examining the witnesses, that the government was represented at the hearing and took part therein, that the applicant was guilty of no fraud, but the testimony of himself and his witnesses showed him qualified for citizenship, that the judge personally signed the decree when the record was made up, that, as we said, we are of opinion the question of the effect of the judge's not being on the bench when Richmond and his witnesses were heard was one of due procedure, and not one of the illegality and unlawfulness of the proceeding, and if we are right in holding the judge's temporary absence was a question of due or undue procedure, the case was one to which the statute did not apply under the authorities.

In United States v. Luria (D. C.) 184 F. 643, Southern District of New York, decided 1911, it was said: "'Illegally procured' means procured by subornation or some other illegal means used to impose upon the court; it does not mean that the certificate was issued through error of law." In United States v. Salomon (D. C.) 231 F. 461, Eastern District of Louisiana, decided 1916, and affirmed (C. C. A.) 231 F. 928, it was said: "It is conceded there was no fraud in this case, and the only illegality complained of is the failure to post the application for 90 days. The posting of the application is clearly a part of the procedure, and at most an irregularity. Irregularity is not synonymous with illegality. Illegality denotes a radical defect, while irregularity is a want of adherence to some prescribed rule or mode of proceeding." And in United States v. Ness, supra, it is said: "Opposition to the granting of a petition for naturalization may prevail, because of objections to the competency or weight of evidence or the credibility of witnesses, or *mere irregularities in procedure.* A decision on such minor questions, at least of a state court of naturalization, is, though clearly erroneous, conclusive, even as against the United States, if it entered an appearance under section 11. For Congress did not see fit to provide for a direct review by writ of error or appeal."

[3, 4] Moreover, it will be observed that section 15 of the act provides that the proceeding to cancel shall be based "upon affidavit showing good cause therefor," and that counsel for Richmond raised the question of the sufficiency thereof by moving to dismiss on the ground that the "apparent wrong of which complaint is made, even if admitted, is not sufficient to warrant the granting of the remedy sought, because (1) said wrong is harmless, and (2) no relief in such cases is provided by said act of Congress." This brings us to the question whether the facts of Richmond's Case "show good cause" for granting the cancellation prayed for by the petition. In that regard we have these uncontradicted facts: First, no fraud or even procuring of Richmond in obtaining the certificate. Second, it is conceded that Richmond by residence, character, procedure, and proofs established his qualifications for citizenship. Third, the government was represented at the hearing, had full knowledge of every fact on which its petition was afterwards based, made no objection of any kind, and thereafter joined in the issue of Richmond's certificate. Fourth, neither at the hearing nor within the term did the government make any application to the judge to correct what is now complained of, or give Richmond the opportunity to comply with the government's present view. Fifth, the government did not appeal. Sixth, Richmond being qualified for citizenship, no fraud or misfeasance on his part being shown, the government has failed to show how it was aggrieved by the decree entered. Seventh, the government, having had the opportunity to raise in said proceeding, in which it was a represented party, every question it now raises, has not only failed to explain or give any reason why it did not then and there raise the questions it now raises, but why, on the contrary, it became an actor in bringing about that of which it now complains.

Conceding, for present purposes, that a concurrent remedy exists, we are of opinion that, under the facts of this case, the government has not shown good cause for the court's exercising such concurrent power, and we feel that Judge McKeehan had a situation before him from which he could infer and adjudge that, under the uncontradicted facts and the unexplained conduct of the government, the petition could rightly be dismissed because, in the words of the statute, the facts did "not show good cause therefor." Having become a party to the original proceeding, and having a right to object, the gov-

ernment occupied the position of any other suitor in a cause. As such suitor, it had the right and opportunity to raise every question it now raises. Like every other litigant, its duty was to object when its objection could be remedied. When it failed to do so, when it failed to give any reason why it did so, we feel it has shown no good cause why the decree, which by its action and acquiescence was entered, should now be disturbed. The question is not one of laches, a thing which cannot be charged against the sovereign; but the situation is one of the government becoming by virtue of a statute a party to proceedings in the court, and by positive affirmative acts and procedure on its part joining in the procurement and entry of a decree which it now seeks to set aside.

In that connection we feel that the purpose of the act of 1906 and the cases which call for its application are well set forth by Judge Walker in United States v. Salomon, supra, in these words: "The remedy given by the statute is the means provided for protecting the right of the government to contest applications for naturalization and for excluding from citizenship those who, under the law, are not entitled to the privilege. The statute does not indicate a purpose to give the remedy when there has been no injury. The district attorneys are authorized to institute the proceedings only 'upon affidavit showing good cause therefor.' The affidavit upon which this suit was instituted amounted to nothing more than an assignment of error of law apparent upon the face of the naturalization proceedings. It states no fact from which it may be inferred that a ground for contesting the application existed, or that the result might have been different, if all the requirements of the statute had been complied with in the naturalization proceedings. It cannot be supposed that it was in the contemplation of the lawmakers that an affidavit would be sufficient to put upon the district attorney the duty of instituting the proceeding provided for if it showed no more than this one discloses. We think it is manifest that it was intended that the required affidavit should state facts constituting 'good cause' for instituting the proceeding, and should do more than point out errors of law in the procedure which led up to the naturalization. The conclusion is that the statutory remedy would be perverted from its obvious purpose of safeguarding things of substance, if it is permitted to be

17 F.(2d)—3

successfully resorted to, without any showing that the issue of the attacked certificate of citizenship *might properly have been denied at the time it was granted,* if the procedure had been a strict compliance with all statutory requirements."

And for this view we find precedent reasoning in the statement by the Supreme Court of the United States in Johannessen v. United States, supra, where it said: "The act makes nothing fraudulent or unlawful that was honest and lawful when it was done. It imposes no new penalty upon the wrongdoer. But if, after fair hearing, it is judicially determined that by wrongful conduct he has obtained a title to citizenship, the act provides that he shall be deprived of a privilege that was never rightfully his." Each of the four cases cited above—Ginsberg, by reason of requisite residence; Ness, entry without registration; Johannessen, insufficient time accompanied by perjury—were all of the character stated by the Supreme Court in Tutun v. United States, supra, "If a certificate is procured when the prescribed qualifications have no existence in fact, it may be cancelled by suit," and situations were presented where, if the facts had been originally presented to the court, or the case had been subsequently heard by the naturalizing court, that court would have been bound "after a fair hearing" to have "judicially determined that by wrongful conduct he had obtained a title to citizenship," while in the present case, if Richmond's petition is again presented to the court for hearing, and undoubtedly Richmond and those in like situation with him should be given an opportunity to be heard, the court will be bound to grant their petitions, for their qualifications for naturalization are conceded, for, to use the language of the Supreme Court in the Johannessen Case, Richmond and his fellows in like situation had not procured "that certificate through fraud or other illegal contrivance."

So holding, we regard the question of these men's naturalization as settled and at rest, and apply to this case what was said by the Supreme Court in Stuart v. Laird, 1 Cranch, 309, 2 L. Ed. 115, when it was sought to raise the question that the justices of the Supreme Court could not sit in the Circuit Court, because, without authorization so to do, "of course the question is at rest, and ought not now to be disturbed."

The decree below is affirmed.