**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Ettore ZUCCA, also known as Mario Sarni, also known as Ettore Sarni Zucca, Defendant.**

United States District Court
S. D. New York.
Nov. 16, 1954.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y., New York City, George C. Mantzoros, Asst. U. S. Atty., New York City, of counsel, for United States.

Judd & Gurfein, New York City, Orrin Judd, New York City, of counsel, for defendant.

PALMIERI, District Judge.

The defendant was naturalized by this Court on January 4, 1944. The United States now brings this action under section 340(a) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 260, 8 U.S.C. § 1451(a) (1952 ed.), to revoke and set aside the order admitting the defendant to citizenship and to cancel the defendant's certificate of naturalization on the grounds that the defendant's naturalization was illegally procured and that the defendant concealed material facts and wilfully misrepresented others in the course of the proceedings leading to his naturalization.

The defendant has moved that the complaint be dismissed because of (1) the Government's alleged failure to draft an adequate complaint and (2) the Government's failure to file an affidavit showing good cause for the institution of the instant proceeding.

The defendant argues that the Government's complaint is procedurally inadequate because it allegedly fails to comply with Rules 8(a), 8(c) (sic), 9(b), and 10(b) of the Rules of Civil Procedure, 28 U.S.C.A. These Rules deal with the general rules of pleading, the particularity with which fraud should be pleaded, and the form of pleadings. Defendant asserts that the complaint fails to give fair notice of the Government's claim, but it is clear that this assertion is without merit. The complaint alleges that the defendant's naturalization was illegally procured in that it was prohibited by section 305 of the Nationality Act of 1940 and that the defendant concealed material facts and misrepresented others in the course of the proceedings leading to his naturalization. It sets forth the alleged act which made the procurement of defendant's naturalization illegal and the allegedly concealed and misrepresented facts with what may well be unnecessary specificity for a civil complaint.

In view of this, it would appear that the defendant is merely saying that a better complaint should have been drawn. However, it is not the function of this court to pass on the artistic merits of pleadings. See Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774. The complaint not only gives the defendant fair notice of the Government's claim but it also informs him of the alleged facts upon which that claim is based. The motion to dismiss the complaint because it is procedurally inadequate is therefore denied.

The defendant has also moved that the complaint be dismissed because of the Government's failure to file an affidavit showing good cause for the institution of this proceeding. He contends that the filing of such an affidavit is required by section 340(a), 8 U.S.C.A. § 1451(a) (1952 ed.), which reads:

"It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings * * * for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization * * *."

Section 340(a) is derived from section 338(a) of the Nationality Act of 1940, 54 Stat. 1137, 1158 which was derived from section 15 of the Act of June 29, 1906, 34 Stat. 596, 601, the first enactment providing for denaturalization on the grounds of fraud or illegal procurement. See S. Rept. No. 1137, 82d Cong., 2d Sess. 45 (1952); S. Rept. No. 1515, 81st Cong., 2d Sess. 755 (1950). The 1906 Act contained the language:

"it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings * * *."

to denaturalize a person on the grounds of fraud or illegal procurement; and the quoted language was incorporated into the 1940 and 1952 acts without Congressional comment.

The Government contends that the source of a United States Attorney's

power to institute civil denaturalization actions is the

"duty of each United States attorney, within his district, to * * * prosecute * * * for the government, all civil actions, suits or proceedings in which the United States is concerned * * *."

28 U.S.C. § 507(a) (2) (1952 ed.). The position taken by the Government is that United States Attorneys had the power to institute civil denaturalization actions before the passage of the Act of June 29, 1906, and that the 1906 Act and its later re-enactments did not circumscribe this power. See H. R. Doc. No. 46, App. D, 59th Cong., 1st Sess. 76, 78 (1905); Bindczyck v. Finucane, 1951, 342 U.S. 76, 79 note 3, 72 S.Ct. 130, 96 L.Ed. 100; United States v. Mansour, D.C.S.D.N.Y. 1908, 170 F. 671, 675; United States v. Norsch, C.C.E.D.Mo. 1890, 42 F. 417. The Government supports its position by showing that Congress was well aware that United States Attorneys were conducting civil denaturalization actions when it enacted the 1906 Act and did not indicate that it wished to curtail their power to do so. See H. R. Rept. No. 1789, 59th Cong., 1st Sess. 2 (1906); statement of Congressman Bonynge, manager of the bill, 40 Cong.Rec. 3640 (1906); statement of Congressman Hayes, 40 Cong.Rec. 7043 (1906). From this the Government concludes that in providing that

"it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor * * *"

to institute denaturalization proceedings, Congress merely imposed a requirement that United States Attorneys institute such proceedings whenever they were furnished with an affidavit of good cause. It did not intend, the argument runs, that a United States Attorney should be powerless to institute proceedings if he had not been furnished with an affidavit.

Although it can be assumed that the civil denaturalization actions initiated by the Government prior to the passage of the Act of June 29, 1906 were valid, see Johannessen v. United States, 1912, 225 U.S. 227, 240, 32 S.Ct. 613, 56 L.Ed. 1066; S. Rept. No. 1515, 81st Cong., 2d Sess. 754 (1950), I cannot agree with the Government's conclusions. The legislative history of the Act of June 29, 1906 indicates (1) that the procedure first outlined in section 15 of that Act, and now set forth in section 340 of the Immigration and Nationality Act of 1952, is the only procedure for denaturalizing a person on the grounds of fraud or illegal procurement, and (2) that this procedure requires that before a United States Attorney can institute a civil denaturalization action he must be furnished with an affidavit of good cause.

The Government's premise that the legislative history of the 1906 Act does not indicate that Congress intended to restrict the theretofore exercised power of United States Attorneys to institute civil denaturalization actions is, in my opinion, invalid. The Government apparently assumes that Congress intended the procedure which is set forth in section 15 of the 1906 Act to be an alternative to the procedure in use before the Act took effect. But section 15 and its legislative history furnish abundant evidence that Congress intended that the procedure set forth in that section should be followed whenever civil denaturalization actions were thereafter initiated.

In addition to referring to the affidavit of good cause section 15 provided that a defendant in a denaturalization proceeding should have 60 days personal notice in which to answer the complaint unless he was absent from the United States or from the district in which he had last resided. And, after the bill that later became the 1906 Act was introduced, Section 15 was amended to provide that a denaturalization action could only be instituted in a court in the judicial district in which the naturalized citizen resided. See statement of Congressman Bonynge, manager of the bill, 40 Cong.Rec. 7874 (1906).

The fact that Congress inserted these requirements for the protection of naturalized citizens in the 1906 Act is inconsistent with the Government's position. It indicates that in enacting section 15 of that Act Congress did intend to limit the theretofore exercised power of United States Attorneys to institute civil denaturalization actions. For if, as the Government contends, the power of United States Attorneys to institute such actions is derived from 28 U.S.C. § 507(a) (2) (1952 ed.), which empowers United States Attorneys to prosecute all civil actions in which the Government is concerned, and is not restricted by the provisions of section 340 of the Immigration and Nationality Act of 1952 (a reenactment of section 15 of the 1906 Act so far as is material to the decision of the instant motion), the provisions which safeguard naturalized citizens are effective only if United States Attorneys choose to give them effect by proceeding under section 340 instead of under their general power to prosecute all civil actions for the Government. An interpretation which gives such cavalier treatment to important safeguards insisted on by Congress cannot be sustained. I therefore conclude that the power of United States Attorneys to institute civil denaturalization actions is derived from and limited by the provisions of section 340 of the Immigration and Nationality Act of 1952. Cf. Bindczyck v. Finucane, 1951, 342 U.S. 76, 81–84, 72 S.Ct. 130, 96 L.Ed. 100; United States ex rel. Volpe v. Jordan, 7 Cir., 1947, 161 F.2d 390, 395.

This determination still leaves open the following questions:

(1) Whether section 340(a) requires that a United States Attorney be furnished with an affidavit of good cause before he can institute a denaturalization proceeding; and

(2) if such an affidavit is required, whether a United States Attorney must file it with the court when instituting a denaturalization proceeding.

In support of its contention that United States Attorneys may institute denaturalization proceedings even though they have not been furnished with affidavits of good cause the Government relies on cases which hold or contain dicta to the effect that a United States Attorney can "institute proceedings of this character sua sponte whenever he ha(s) reason to believe that the law ha(s) been violated * * *." Schwinn v. United States, 9 Cir., 112 F.2d 74, 75, 76, affirmed "on the sole ground that the certificate of citizenship was illegally procured." 1940, 311 U.S. 616, 61 S.Ct. 70, 85 L.Ed. 390; United States v. Jerome, D.C.S.D.N.Y. 1953, 115 F.Supp. 818; United States v. Lustig, D.C.S.D.N.Y. 1953, 110 F.Supp. 806; Cf. United States v. Tuteur, 7 Cir., 1954, 215 F.2d 415; United States v. Knight, D.C.Mont. 1923, 291 F. 129; United States v. Leles, D.C.N.D.Cal. 1915, 227 F. 189.

To the extent that these cases are predicated upon the view that United States Attorneys possess the power to initiate civil denaturalization actions unfettered by the provisions of section 340, the preceding portion of this opinion shows why I cannot agree with them.

Moreover, it does not appear that any of the cases cited by the Government considered the legislative history of section 340 which has been referred to above, and only two referred to Bindczyck v. Finucane, 1951, 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100. One distinguished it on the ground that it dealt with denaturalization proceedings instituted in a state rather than a federal court. See United States v. Jerome, D.C. S.D.N.Y. 1953, 115 F.Supp. 818. With deference, I believe that this distinction does not give sufficient weight to the reasoning of the Bindczyck case. In that case the Court said:

"In the light of * * * (the legislative history of section 15 of the 1906 Act) we cannot escape the conclusion that in its detailed provisions for revoking a naturalization because of fraud or illegal pro-

curement not appearing on the face of the record, Congress formulated a self-contained, exclusive procedure. With a view to protecting the Government against fraud while safeguarding citizenship from abrogation except by a clearly defined procedure, Congress insisted on the detailed, explicit provisions of § 15. * * *

"Between them, these two sections, § 11 and § 15, provided a complete and exclusive framework for safeguarding citizenship against unqualified applicants. * * * (I)f citizenship was granted, it was to be proof against attacks for fraud or illegal procurement based on evidence outside the record, except through the proceedings prescribed in § 15. The congressional scheme, providing carefully for the representation of the Government's interest before the grant of citizenship and a detailed, safeguarded procedure for attacking the decree on evidence of fraud outside the record, covers the whole ground. * * *" 342 U.S. at pages 83–84, 72 S.Ct. at page 134.

I believe that the "self contained, exclusive procedure" must be followed in denaturalization proceedings instituted in federal courts as well as those instituted in state courts.

In the other, United States v. Lustig, supra, the court considered itself bound by the Supreme Court's affirmance of the lower court's disposition of the Schwinn case, although it stated that "it would seem, the reasoning of the Court of Appeals in the Schwinn case has been repudiated" by the Supreme Court's reasoning in the Bindczyck case. See 110 F. Supp. at page 808 note 3. It has already been pointed out that the Supreme Court affirmed Schwinn v. United States, 9 Cir., 1940, 112 F.2d 74, "on the sole ground that the certificate of citizenship was illegally procured," see 1940, 311 U.S. 616, 61 S.Ct. 70, 85 L.Ed. 390; and examination of the briefs submitted to the Supreme Court indicates that the issue

of the power of a United States Attorney to institute a civil denaturalization action when he has not been furnished with an affidavit of good cause, was not raised before that Court. Therefore, I cannot regard the Supreme Court's affirmance of the lower court's disposition of the Schwinn case as being dispositive of this issue.

Nor can I agree with the cases cited by the Government if they are interpreted as holding only that section 340(a) does not require that a United States Attorney be furnished with an affidavit of good cause before he can institute a denaturalization proceeding. This opinion has already shown that section 340(a) is derived from section 15 of the Act of June 29, 1906 and is similar to that section in all respects that are material to the decision of the instant motion. Section 15 of the 1906 Act was itself derived from section 34 of a proposed uniform naturalization law drafted by two members of the Commission on Naturalization appointed by President Theodore Roosevelt. It provided:

"The United States shall have the power to institute proceedings * * * for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate * * * was illegally issued. * * *" H. R. Doc. No. 46, App.F. 59th Cong., 1st Sess. 106 (1906).

It will be noted that this draft did not mention an affidavit of good cause. But when the bill which later became the 1906 Act was reported out of committee the committee report said that an important feature of the bill was that

"(p)ower is given to the United States, *upon affidavit of any credible person*, to institute proceedings to cancel any certificate of citizenship which may have been procured through fraud or otherwise illegally obtained."

See H. R. Rept. No. 1789, 59th Cong., 1st Sess. 5–6 (1906) (emphasis added); and

statement of Congressman Bonynge, 40 Cong.Rec. 7874 (1906). Since is appears that Congress altered the draft provision to refer to an affidavit of good cause, it can be assumed that Congress considered the affidavit significant and intended to condition the power of the United States to institute denaturalization proceedings upon the furnishing of such an affidavit to a United States Attorney.

This view of the legislative history of section 15 of the 1906 Act is supported by a contemporaneous administrative interpretation of that section. In a letter dated March 26, 1907 the Attorney General of the United States advised the Secretary of Commerce and Labor, who was then charged with the responsibility of administering the immigration and naturalization laws, as follows:

"The Honorable

The Secretary of Commerce and Labor.

Sir:

The Department has the honor to acknowledge receipt of your letter of March 18th in which you ask whether the filing of an affidavit is necessary to give a United States attorney authority to institute proceedings in any court for the cancellation of a naturalization certificate. It appears to the Department that this is the case. The object of the provision undoubtedly is to protect holders of certificates from annoyance and attorneys from unnecessary labor as the result of mere complaints by individuals unable to produce evidence and unwilling to assume the responsibility therefor, as suggested in your letter; but it also seems clear to me that Congress has seen fit to prescribe the method by which this protection to those holding naturalization certificates is to be enforced.

I am, therefore, of opinion that before any United States attorney is authorized to institute proceedings for the cancellation of a naturalization certificate he should be furnished with a proper affidavit on which the proceedings may be based.

Respectfully,
Charles J. Bonaparte
Attorney General"

See unpublished opinion Att'y Gen., March 26, 1907, National Archives; Cohen v. United States, 1912, 38 App.D.C. 123; Van Dyne, A Treatise on the Law of Naturalization of the United States 138 (1907).

■ Because of the legislative history of the denaturalization provision and the weight to be given to a contemporaneous administrative interpretation of a statute by the officer charged with its enforcement, see Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397, I hold that before a United States Attorney may institute a denaturalization proceeding he must be furnished with an affidavit of good cause.

■ The final question for decision is whether a United States Attorney must file the affidavit of good cause that has been furnished to him with the court when instituting a denaturalization proceeding. I believe that he must do so. The instant proceeding is of the most serious import. "Denaturalization * * * may result in the loss 'of all that makes life worth living.'" See Knauer v. United States, 1946, 328 U.S. 654, 659, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500. It is often a preliminary step to deportation with its attendant rending of the social and familial roots and ties that have become the life of the deportee. Indeed, the mere initiation of a denaturalization proceeding may have serious adverse consequences for the naturalized citizen.

Thus, there can be no doubt that Congress had good reason to surround denaturalization actions with the safeguards prescribed by section 15 of the 1906 Act and its reenactments, one of which is the affidavit of good cause. But, the protection afforded by the requirement of an affidavit of good cause

would be seriously impaired if the defendant in a denaturalization action could not examine it and test its sufficiency by motion before trial. Cohen v. United States, 1912, 38 App.D.C. 123; United States v. Richmond, 3 Cir., 1927, 17 F.2d 28; United States v. Salomon, 5 Cir., 1916, 231 F. 928; unpublished opinion of Judge Ryan in United States v. Candela, Civil No. 93–308, D.C.S.D.N.Y., October 14, 1954.

Since the absence of an affidavit of good cause in the instant case deprives the defendant of a protection which Congress has afforded him, the complaint is dismissed unless the Government files such an affidavit within 15 days. My decision makes it unnecessary for me to decide certain procedural questions posed by the defendant's alternative motions. However, I am prepared to deal with them should the future course of this action warrant it.

Settle order on notice.