**UNITED STATES of America**
v.
**Joseph William CHANDLER.**
**Civ. No. 7447.**

United States District Court
D. Maryland.
May 20, 1955.

George C. Doub, U. S. Atty., and James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for the United States.

Harold Buchman, Baltimore, Md., and Joseph Forer, Washington, D. C., for defendant.

COLEMAN, Chief Judge.

■ This is a suit by the Government for revocation of the defendant's citizenship, brought under Section 340(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1451(a), and Section 338(a) of the Nationality Act of 1940, 8 U.S. C.A. Sec. 738(a), the complaint, as amended, alleging that this last named Section was continued in force and effect by Section 405(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1101 note. The proceeding is before the Court on defendant's motion to dismiss the complaint on the ground that: (1) this proceeding was not instituted upon an affidavit in conformity with Section 340 (a) of the Immigration and Nationality Act; (2) the complaint is based on a repealed statute; (3) the complaint and relief sought thereby are barred on the grounds of res adjudicata and estoppel by prior judgment; and (4) the complaint indistinguishably pleads separate and independent statutory grounds for revocation of citizenship in such a way as to impede the defendant in answering and defending. The proceeding is also before the Court on defendant's motion to strike certain enumerated allegations of the complaint which need not be repeated here because the grounds for objection to these allegations have been, in substance, dealt with in the arguments and briefs directed to defendant's motion to dismiss.

As stated in the complaint, on May 13, 1943, the defendant filed a petition for naturalization in the United States District Court in Savannah, Georgia, and was admitted to citizenship by that Court on May 14, 1943. The complaint then sets forth in detail that defendant procured his naturalization by concealment of material facts and by wilful misrepresentation, such alleged concealment and wilful misrepresentation being summarized in paragraphs 7 and 8 of the complaint, as follows: "7. In the proceedings which led to his naturalization, the said defendant deliberately and intentionally concealed facts relating to his membership in the Communist Party and its affiliated organizations, facts relating to his prior arrests, and facts relating to his absence from the United States subsequent to 1923, and his intentions at the time of filing his petition for naturalization, and his true state of mind at the time he took the oath of allegiance to the United States required of him at the time of naturalization, all of which facts were material to his naturalization.

"8. The said defendant concealed material facts and made wilful misrepresentations in the proceedings leading to

his naturalization as hereinabove set forth in order to prevent the making of a full and proper investigation of his qualifications for citizenship to conceal his lack of attachment to the principles of the Constitution; to induce the naturalization examiner to make an unconditional recommendation to the Court that his petition be granted; to preclude inquiry by the Court concerning his qualifications for citizenship, and to procure naturalization in violation of law."

Attached to the complaint is an affidavit of one Reuben Speiser, Attorney, Immigration and Naturalization Service, United States Department of Justice, asserting that he "as such has access to the official records of the said Service, from which the following facts appear", and then follows a detailed statement of facts which have been embodied in the complaint, a summary of which is contained in paragraphs 7 and 8 of the complaint which we have quoted above.

The affidavit concludes with the three following paragraphs: "2. That the naturalization of said Joseph William Chandler was procured by means of his concealment of material facts and willful misrepresentation, as more particularly set forth in paragraph 1.

"3. That good cause exists for the institution of a suit under Section 340 (a) of the Immigration and Nationality Act, Public Law 414, 82nd Congress, to set aside and cancel the naturalization of Joseph William Chandler as having been procured by concealment of material facts and by willful misrepresentation.

"4. That the last known place of residence of said Joseph William Chandler is 11818 Huggins Drive, Silver Spring, Maryland."

It is this affidavit which forms the basis of the first ground, above stated, of defendant's motion to dismiss the complaint, namely, that this affidavit does not conform to the requirements of Section 340(a) of the Immigration and Nationality Act, and more specifically, because the affidavit is merely a hear-say on hear-say summary of what a Government attorney read in the files of the Immigration and Naturalization Service.

Section 340(a) of the Immigration and Nationality Act provides, insofar as pertinent to the question before us, as follows: "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 310 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively: * * *."

As opposed to defendant's contention, the Government maintains that the reference in the above provision to an affidavit of good cause is not jurisdictional; that the Government sua sponte could bring the present proceeding without any affidavit at all; in other words, that the correct interpretation of the above-quoted provision is that if a United States District Attorney is presented with an affidavit showing good cause for revocation of citizenship of an individual, it shall *then* be his duty to bring such a proceeding, but that he may bring the same sort of proceeding even though no such affidavit has been made.

We believe there is weight in the Government's contention, but since we find that, even assuming an affidavit was a jurisdictional requisite, the affidavit in the present case is adequate in character, there is no necessity for ruling that the Government had the right to bring the present proceeding unsupported by an affidavit.

In Schwinn v. United States, 112 F.2d 74, a decision of the Court of Appeals for the Ninth Circuit, it was held that the affidavit was not jurisdictional under a section of the law that contained language identical with Section 340(a) as it now stands in the Immigration and Nationality Act insofar as it related to an affidavit. The Court said, 112 F.2d 74, 75–76: "There is nothing to the point that because the district attorney did not introduce evidence at the trial to the effect that he had been presented with an affidavit showing the deficiencies of the petition, the judgment must be reversed. The portion of § 405, Tit. 8 U.S.C.A. which refers to the affidavit reads as follows: 'It shall be the duty of the United States district attorneys for the respective districts * * * upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. * * * '

"This affidavit is not jurisdictional, but merely makes it the duty of the district attorney to proceed. The district attorney could institute proceedings of this character sua sponte whenever he had reason to believe that the law had been violated in the respect alleged in the petition.

"The case of United States v. Knight, D.C., 291 F. 129, was a proceeding under the same statute and no affidavit to the district attorney upon which to base the case was proved—in this respect exactly as here. The court referred to United States v. Leles, D.C., 227 F. 189, 190, and said (page 130 of 291 F.), 'The statute is inclusive, not exclusive, and, like statutes for actions on complaints by private prosecutors, does not preclude public prosecutors from proceeding of their own motion to enforce the laws.'

"The case was appealed to this court and was affirmed [United States v. Knight, 9 Cir., 299 F. 571] without reference to the affidavit. Had this court not been satisfied that the lower court had jurisdiction it would without doubt have ordered the case dismissed instead of affirming the judgment."

The decision in the Schwinn case was affirmed by the Supreme Court, 311 U.S. 616, 61 S.Ct. 70, 85 L.Ed. 390. It is true that the Supreme Court affirmed the judgment per curiam on the sole ground that the certificate of citizenship was illegally procured, and did not refer to the precise question with respect to the affidavit that is now before us. However, it would seem that the decision of the Supreme Court must be taken as an affirmance of the lower court's disposition of that issue. It was so held in United States v. Lustig, D.C., 110 F.Supp. 806 (Unappealed). There, the Court said, 110 F.Supp. 806, 807–808: "Defendant further argues that the failure to submit an affidavit of good cause in support of the complaint is a jurisdictional defect. But the case of Schwinn v. United States, 9 Cir., 112 F.2d 74, holding that the affidavit is not jurisdictional, was affirmed by the Supreme Court, 311 U.S. 616, 61 S.Ct. 70, 85 L.Ed. 390, and that ruling remains as the controlling law."

We do not find anything in Bindczyck v. Finucane, 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100, that is to be taken as rejecting or qualifying the decision in the Schwinn case insofar as the issue respecting the affidavit was concerned. There is nothing in that decision that relates to the question before us. The Schwinn case was not referred to. The Court held that where petitioner's naturalization had been revoked by a State Court procedure, that was not in accordance with the uniform procedure prescribed by Section 338 of the Nationality Act of 1940 (now Section 340 of the Immigration and Nationality Act, 8 U.S. C.A. § 1451), such revocation was void, since the latter procedure was exclusive of other procedures. The Lustig case

has been followed by the District Court for the Northern District of Indiana in United States v. Schuchhardt, 48 F.Supp. 876 (appeal not reported); also in United States v. Tuteur, 215 F.2d 415, a decision of the Seventh Circuit Court of Appeals, and in United States v. Collins, D.C.S.D.N.Y., 131 F.Supp. 545. Counsel for the defendant relies on two decisions to the contrary, United States v. Zucca, D.C., 125 F.Supp. 551; Id., 2 Cir., 221 F.2d 805, and United States v. Candela, D.C., 131 F.Supp. 249, both being decisions of the Southern District of New York. Thus, much divergence is apparent in the decisions.

As already stated, even assuming an affidavit to be a jurisdictional requisite, we find that the Speiser affidavit in the present case is entirely adequate. Counsel for defendant attack this affidavit on several grounds. It is contended that since the affidavit was executed on December 22, 1952, and the complaint was not filed until a year and a half later, that is, until June 8, 1954, this fact alone raises a reasonable doubt as to the propriety of relying upon it, as a showing of good cause. In addition, it is stressed that the affidavit was not made on personal knowledge, or even on information obtained by the affiant's investigations, but represents merely his summary of matters he read in the files of the Immigration and Nationalization Service, and that the affiant has not alleged that he knew or ever saw the defendant, or had any personal knowledge of any of the matters alleged.

We do not believe that these arguments are sufficient to render the affidavit inadequate. A similar affidavit was held sufficient in United States v. Leles, D.C., 227 F. 189. As opposed to these cases, counsel for defendant rely on such cases as United States v. Salomon, 5 Cir., 231 F. 928, and United States v. Richmond, 3 Cir., 17 F.2d 28, the first of which held that an affidavit does not state facts constituting "good cause" for instituting revocation proceedings which does no more than point out errors of law in the procedure which led to the naturalization. The second decision is to the same effect. Counsel for defendant also rely upon decisions that do not deal with the naturalization law, but involve the interpretation of other unrelated statutes or rules of criminal procedure where the affidavit is expressly required to be on personal knowledge. In fact, we have been referred to no case that directly supports defendant's contention.

■ We now turn to a consideration of the second ground of defendant's motion to dismiss, namely, that the complaint is based on a repealed statute. The argument for defendant in support of this contention is as follows: The complaint as amended is based upon both Section 340(a) of the Immigration and Nationality Act and Section 338(a) of the Nationality Act of 1940; that under the latter, one of the grounds for revocation of citizenship was that naturalization was "illegally procured," whereas this ground was not retained in the Immigration and Nationality Act of June 27, 1952, but that, nevertheless, the complaint seeks to revoke citizenship on this ground, as well as on grounds specified in the latter Act; that Section 338 (a) of the 1940 Act, however, has been specifically repealed by Section 403(a) (42) of the 1952 Act, and that the saving clause of the 1952 Act, Section 405 (a), 8 U.S.C.A. § 1101 note, does not apply because it contains the provision that it applies only if not " 'otherwise specifically provided therein' "; that Congress has declared in Section 340(i) of the 1952 Act (hereinafter quoted) that its denaturalization provisions shall apply to both future and past naturalizations; and that, therefore, it is not consistent to say that Congress intended the repealed provisions of the 1940 Act relating to denaturalization should carry over by virtue of the aforegoing saving clause.

The Government in opposing the aforegoing contentions made by the defendant asserts that the allegations of the complaint, if proved, clearly establish that defendant's naturalization was illegally

procured; that illegality was specifically made a ground for denaturalization in Section 338(a) of the Nationality Act of 1940, 8 U.S.C.A. § 738(a), that Section providing for revocation proceedings "on the ground of *fraud* or on the ground that such order and certificate of naturalization were *illegally procured.*" (Emphasis supplied); and that this provision in Section 338(a) has not been repealed by Section 405(a) of the Immigration and Nationality Act of 1952. This latter Section, insofar as it relates to the question before us, is as follows: " 'Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * * ' "

The Government contends that the object of the above saving provisions is to prevent the expiration of a prior statute from cutting off appropriate measures to enforce the expired statute, in relation to violations of it occurring before its expiration, citing Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933; that the above-quoted saving clause in Section 405 in referring to any "condition" or "liability" was intended to accomplish this purpose; and that it is reasonable to assume in referring to any " 'condition, * * * existing, at the time this Act shall take

effect, * * * ' " Congress did not mean the usual legal conditions reflected in property and contract law but its technical connotation; that the same is true where the saving clause in Section 405(a) refers to the continuing in force and effect of any "liability" not yet accrued, citing Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557. That decision dealt with offenses committed in 1945, in violation of Section 346(a) (1), (5) of the Nationality Act of 1940, which were subject to a five year limitations provision by virtue of Section 346(g) of that Act. These sections were repealed, effective September 1, 1948, by Section 21 of the new Criminal Code, 62 Stat. 862, 18 U.S.C.A. note preceding section 1, which also provided that "rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." The indictment against Bridges and his co-defendants was returned on May 25, 1949, that is, more than three years, but less than five years after the offenses were committed. The Supreme Court held that the Wartime Suspension Act was inapplicable and that the five-year statute of limitations was not saved, although the substantive liabilities were. The Government here maintains that since the remedy set up in Section 338(a) of the Nationality Act of 1940, unlike the remedy to enforce criminal liabilities, contains no limitation provision, therefore both the liability and the remedies provided for enforcement of that section remain unimpaired.

To the contention that Section 340(i) of the Immigration and Nationality Act, 8 U.S.C.A. § 1451(i), may be construed as being one of the exceptions intended to be embraced by the clause " 'unless otherwise specifically provided therein' " within the meaning of Section 405(a), the Government replies that where Congress has intended otherwise specifically to provide, it has done so in clear and express terms, as for example in Sections 313, 315 and 318 of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1424, 1426 and 1429. However, Section 340(i)

reads as follows: "The provisions of this section shall apply not only to any naturalization granted and to certificates of naturalization and citizenship issued under the provisions of this title, but to any naturalization heretofore granted by any court, and to all certificates of naturalization and citizenship which may have been issued heretofore by any court".

We cannot admit that the Immigration and Nationality Act can properly be referred to as a model of draftsmanship, because it is replete with ambiguous and conflicting phraseology. Nor can we concur in the position taken by the Government that the saving clause in Section 405(a) of the Immigration and Nationality Act has resulted in keeping in effect Section 338(a) of the Nationality Act of 1940 and thereby preserving, and carrying over into the new Act, illegality as a ground for revocation of citizenship. So to decide would be contrary to the wording of Section 340(i), above quoted, of the later Act, and also to the interpretation given by those who have codified the later Act as to its effect upon the related sections of the earlier Act. The precise question before us appears to have been squarely dealt with in only one reported decision, i. e., that of Judge Aldrich in the Massachusetts District, in United States v. Harajovic, D.C., 125 F.Supp. 659. Counsel for the present defendant rely upon this decision. We agree that it is sound and therefore follow it in the present case. We quote somewhat extensively from Judge Aldrich's opinion, as follows, 125 F.Supp. 659, 660–661: "This is a proceeding brought in November, 1953 to revoke the defendant's certificate of naturalization obtained in 1944 in the United States District Court for the District of Georgia. The complaint expressly asserts jurisdiction under, and violation of, both the Nationality Act of 1940 and the Immigration and Nationality Act of 1952. The defendant has filed motions to dismiss and to strike. These motions raise, inter alia, the question of the applicability of the 1940 act. * * *

"This question is, apparently, of first impression. While there are remarks in a few opinions cited by the government to the effect that the vulnerability of 1940–1952 certificates is always to be determined under the 1940 act, it appears by the docket numbers, or otherwise, that all of these cited cases had been instituted prior to December 24, 1952 when the later act became effective. The courts did not have the present question before them, and did not purport to be deciding it.

"Neither am I appreciably helped by the passages to which my attention has been called from committee and commission reports describing the intended purpose or effect of the provisions of the 1952 act. I do not find sufficient ambiguity to call such guides into consideration.

"Section 403(b) of the 1952 act, 8 U.S.C.A. § 1101 note, expressly repeals all conflicting laws, except to the extent provided in §. 405, 8 U.S.C.A. § 1101 note. Section 405(a) of this savings clause preserves the validity of any certificate, or other of certain listed items, valid when the act took effect, including 'any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing * * *.'

"The government argues that the word 'liability' includes liability for the assertion or determination in a subsequent proceeding that a certificate is invalid. This might be so in a broad sense, but it does not necessarily mean anything more than that the validity is open to subsequent attack, as distinguished from the method by which it is to be attacked, or the extent.

"When one turns to the 1952 act § 340(i), 8 U.S.C.A. § 1451(i), provides that the revocation provisions of that act 'shall apply not only to any naturalization granted and to certificates of naturalization and citizenship issued under the provisions of this subchapter, but to any

naturalization heretofore granted by any court * * *.'

."If this leaves any doubt that the provisions of the 1940 act are not applicable to proceedings commenced after the 1952 act became effective, we may return to § 405(b), 8 U.S.C.A. § 1101 note, which expressly provides that naturalization proceedings commenced under the 1940 act shall continue to be heard and determined in accordance with that act. There is no complementary provision that the invalidity or revocation provisions of the 1940 act remain in effect as to naturalizations obtained under the 1940 act, but not attacked until afterwards.

"It seems to me it would be cumbersome, if not altogether unworkable to have a naturalization certificate attacked simultaneously under the, by hypothesis, conflicting provisions of two different acts, and that it should take a strong showing of legislative intent to produce that result. My interpretation of the 1952 act rebuts rather than encourages such a finding."

■ In the Harajovic case, the defendant contended, just as the defendant in the present case, and Judge Aldrich assumed, without deciding, that the 1940 Act provided substantive grounds for revocation which do not exist under the later Act. The 1940 Act does designate illegal procurement of naturalization as a ground for revocation, as well as fraud. If the words "illegally procured" are construed as having been used in this and prior Acts as referring to errors of law in connection with the procedure leading to naturalization, then it is reasonable to say that these Acts contained a substantive ground not expressly, nor by proper inference embraced in the later, the 1952 Act. Since this ground has been held *not* to be a valid one for revocation of naturalization under the law as it stood prior to the 1952 Act, it may well be that this is one reason, at least, why the words "illegally procured" were not repeated in the 1952 Act. See Bindczyck v. Finucane; United States v. Salomon, and United States v. Richmond,

supra. But, whatever Congress may have intended to be the scope of the application of the words "illegally procured" as used in the earlier Acts, we conclude that the Government's contention is unsound that Section 338(a) of the Act of 1940 may be invoked in the present proceeding. However, we cannot see that whichever way this precise point is decided makes any real difference in the present case, insofar as what must control this Court in ruling upon the defendant's motion to dismiss. Section 340(a) of the later Act provides two grounds for revocation, (1) concealment of a material fact, and (2) wilful misrepresentation, both of which constitute fraudulent conduct, which of course, is illegal conduct; and the allegations of fraud are the very essence of the Government's complaint in the present case. Therefore, the Government will be allowed to proceed to present its proof of the alleged fraud, provided the allegations contained in the complaint based upon Section 338(a) of the Act of 1940 are capable of complete, separate deletion; and provided further, of course, that the complaint is not otherwise materially defective.

We are satisfied that the allegations of the complaint are capable of such separation, since paragraphs 10, 11, 12, 13 are the only ones that are based on Section 338(a) of the Act of 1940, except for those parts of paragraphs 1 and 14 which so allege indirectly, by reference to Section 338(a) of the Act of 1940. Accordingly, paragraphs 10, 11, 12 and 13 will be struck from the complaint and also those parts of paragraphs 1 and 14 which relate to the last-named Section. There is no necessity for requiring the Government to file an entirely new complaint. It may proceed on the present one with the above-stated deletions, provided, of course, there is no merit found in the remaining objections made to the complaint by the defendant, which we will now proceed to consider.

■ We turn, therefore, to the third ground of defendant's motion to dismiss, namely, that the complaint and relief

sought thereby are barred on the ground of res adjudicata and estoppel by prior judgment. Summarized, this contention is that defendant's naturalization cannot now be attacked on the ground that at the time of his naturalization he was not "attached to the principles of the Constitution or well disposed to the good order and happiness of the United States," because such attachment and disposition being, by statute, preconditions to naturalization, were issues necessarily determined by the naturalization judgment; are therefore res adjudicata, and are not open to any re-examination in such a proceeding as this for denaturalization, even under the Act of 1940.

We believe that this contention is totally lacking in merit. Certainly this argument cannot apply to a naturalization that has been *fraudulently* procured. The cases cited in support of defendant's theory, such as United States v. Bischof, 2 Cir., 48 F.2d 538, therefore, do not call for any analysis. There, the eligibility for naturalization was contested; testimony was taken and upon that, the Court found in favor of the petitioner. Then, in subsequent denaturalization proceedings, these litigated facts were asserted as the basis for illegal procurement, and it was found correctly that the matter was res adjudicata. Furthermore, if the contention of counsel for defendant is correct and the doctrine of res adjudicata applicable, then the conclusion is inescapable that the Supreme Court would not have affirmed the revocation decree in the Schwinn case. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500, and Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, do not support defendant's contention.

■ Finally, we come to the remaining ground asserted by defendant in support of its motion to dismiss the complaint, namely, that it indistinguishably pleads separate and independent statutory grounds for revocation of citizen-ship in such a way as to impede the defendant in answering and defending.

Little need be said with respect to this contention. It appears to be based upon the theory that since revocation of defendant's citizenship is sought on the ground that he was a member of the Communist Party, and that he concealed and misrepresented such membership, the holding of the Supreme Court in the Schneiderman case that under the Nationality Act of 1940 an applicant for citizenship was not required to represent that he was not a member of the Communist Party, supports defendant's contention. Schneiderman's naturalization occurred in 1927, prior to the effective date of Section 305 of the Nationality Act of 1940, 8 U.S.C.A. § 705.[1] At that time, most unfortunate as it appears to have been, membership in the proscribed organizations did not per se preclude naturalization, and in declining to cancel Schneiderman's citizenship, the Court held that the Government had failed to sustain the burden of proof resting upon it to establish by clear, convincing and unequivocal evidence, that solely because of membership in the Communist Party, Schneiderman could not be attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States. It is shocking to argue that it follows from this decision that membership in the Communist Party, and belief in Communist doctrines are immaterial questions in a denaturalization proceeding. Whether the Government will sustain the required burden of proof in the present case is to be determined by the evidence presented, and the issue cannot be foreclosed on a motion to dismiss the complaint. Furthermore, as the Government points out, when the present defendant was naturalized in 1943, Section 305 of the Nationality Act of 1940 was in effect. See Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170; Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, and Hari-

1. Now 8 U.S.C.A. § 1424.

siades v. Shaughnessy, 343 U.S. 936, 72 S.Ct. 767, 96 L.Ed. 1344, which give no support to this last contention made on behalf of the defendant.

For the reasons herein stated, defendant's motion to strike certain specified parts of the complaint will be granted as to paragraphs 10, 11, 12 and 13, and also as to those parts of paragraphs 1 and 14 which relate to Section 338(a) of the Act of 1940; but defendant's motion to dismiss will be denied as to the complaint after these deletions.

An order will be signed in accordance with this opinion.