## BRENCI v. UNITED STATES.
### No. 4393.

United States Court of Appeals
First Circuit.
June 1, 1949.

Simon B. Stein, Boston, Mass. (Henry J. Stein, Boston, Mass., on the brief), for appellant.

Edward A. Counihan, III, Assistant U. S. Attorney, Boston, Mass. (William T. McCarthy, United States Attorney, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered by the District Court of the United States for the District of Massachusetts revoking and setting aside a previous order of the same court admitting the appellant, Alfred Brenci, to United States citizenship, and cancelling his certificate of naturalization.

The judgment appealed from was entered on a petition filed by the United States Attorney for the District of Massachusetts pursuant to § 338(a) of the Nationality Act of 1940, 54 Stat. 1158–1159, 8 U.S.C.A. § 738(a), in which it is alleged that the appellant's naturalization in the court below on August 12, 1922, "was fraudulently and illegally procured" in that in the course of his naturalization proceedings he had willfully and knowingly concealed two convictions for felonies in the Superior Court of the Commonwealth of Massachusetts.

After hearing, the court below, having denied a motion by the Government for summary judgment, found that the appellant had been arrested, convicted and sentenced to one year in the House of Correction for rape in 1915, and had again been arrested, convicted and sentenced to pay a fine of $100 for armed assault and carrying a loaded revolver (actually, although he was indicted on both charges, he was convicted and sentenced on the second charge only) in 1921 as alleged in the petition; that he had testified under oath at his preliminary examination by a naturalization examiner in 1920 that he had been arrested in 1912 and again in 1914 for the petty offense of leaving an unlighted obstruction on a sidewalk but had not disclosed his conviction for rape in 1915; that he had failed to disclose either of his felony convictions to the court below when his petition for naturalization came on to be heard in 1922; and that his "failure to disclose these convictions was willful and fraudulent in that he knew that if he admitted them his petition for naturalization would in all likelihood be denied." Wherefore the court below concluded that the appellant's naturalization was fraudulently procured and must be revoked and his certificate of naturalization must be cancelled.

92

■ The appellant makes no attempt to deny his convictions in the Massachusetts Superior Court as set out herein or to deny his failure to disclose those convictions in the course of his naturalization proceedings. His principal defense at the trial was that those convictions did not reflect on his moral character for the reason that the offenses on which they were based did not involve moral turpitude, in support of which he relied upon an affidavit filed in opposition to the Government's motion for summary judgment in which he asserted that the person he was charged with raping, although below the age of consent, in fact consented to having sexual relations with him, and that the assault charge grew out of an attempt on his part to protect his sister from her intoxicated husband and three other men. The court below, we think entirely correctly, disposed of this defense in its memorandum opinion on the ground that whether or not the crimes involved moral turpitude was not in issue; the only issue being whether the appellant was actually convicted and sentenced as alleged, and whether he willfully and fraudulently failed to disclose those convictions in the course of his naturalization proceedings. Now, on this appeal, the appellant's contention is that the Government has failed to sustain its burden of proof on the issue of his fraudulent concealment of his conviction for rape in 1915 from the naturalization examiner when his petition for naturalization was filed in 1920, and on the issue of his fraudulent concealment both of his 1915 conviction for rape and of his 1921 conviction for carrying a loaded pistol, from the court below when his petition for naturalization was heard in 1922.

■ Although proceedings for denaturalization under § 338(a) of the Nationality Act of 1940, supra, are not criminal in their nature, the Government to prevail must "prove its charges in such cases by clear, unequivocal and convincing evidence which does not leave the issue in doubt." Klapprott v. United States, 335 U.S. 601, 612, 69 S.Ct. 384, 389, citing Schneiderman v. United States, 320 U.S. 118, 158, 63 S.Ct. 1333, 87 L.Ed. 1796. See also Baumgartner v. United States, 322 U.S. 665, 671, 64 S.Ct. 1240, 88 L.Ed. 1525. And it is the duty of this court as an appellate tribunal to examine the Government's evidence to ascertain whether it meets this high standard of proof. Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1504; United States v. Hauck, 2 Cir., 155 F.2d 141, 144.

We turn therefore to the evidence introduced by the Government at the trial in the court below.

To prove its charge that the appellant concealed his conviction for rape at his preliminary examination the Government, over the appellant's objection, introduced as an exhibit its so called "docket slip" pertaining to the appellant's naturalization. This document was introduced through the testimony of a veteran Naturalization Examiner who said that it came from the records of the Immigration and Naturalization Service, that he had himself made out part of it, and that it was a departmental form (No. 2328) regularly used by the Naturalization Service of the United States Department of Labor at the time the appellant was admitted to citizenship as an office record of the statements made by aliens when applying for citizenship as to their length of residence, absences, arrests on criminal charges, etc. On the back of this exhibit appears the notation: "Arrested:—1912—Boston—leaving obstruction on sidewalk without a light. Also same offense in 1914." To prove its charge that the appellant concealed both his 1915 conviction for rape and his 1921 conviction for carrying a loaded pistol at the hearing in the court below on his petition for naturalization, the Government introduced a transcript of a statement in question and answer form made by the appellant to an officer of the United States Immigration and naturalization Service on June 2, 1945, in Boston, in which, after admissions by the appellant as to his convictions as stated herein, the following appears:

"Q. What was your reason for failing to state to the naturalization officials and to the judge of the United States District Court when you were questioned by them while under oath, duly administered on August 12, 1922, the fact that you had been arrested at Chelsea, Mass. on August

2, 1915 on a charge of rape, for which you were sentenced to a year in the House of Correction by the Superior Court, Suffolk County, Boston, Mass., on October 26, 1915? A. I had been advised by my friends that if I told the officials the truth about my arrest record I would not get my citizenship papers, and I did want to get my citizenship papers.

"Q. What was your reason for failing to state to the naturalization officials and to the judge of the United States District Court when you were questioned by them while under oath on August 12, 1922, the fact that you had been arrested at East Boston, Mass. on March 2, 1921 on a charge of assault to kill and carrying a loaded revolver, for which you were convicted in the Superior Court of Suffolk County, Boston, Mass. on March 14, 1921 and ordered to pay a fine of $100 which fine you did pay? A. The same reason as for not telling them about being arrested on the charge of rape.

"Q. Do you admit that you did knowingly and willfully fail to make known the true and correct record relating to your various arrests at the time you filed your petition for naturalization in the United States District Court, Boston, Mass. on March 8, 1920, and also at the time you were questioned before the judge of the United States District Court, Boston, Mass. on August 12, 1922? A. Yes. I didn't say the truth because I thought I would not get my papers.

\* \* \* \* \* \*

"Q. Do you admit that you did commit perjury, when, while under oath lawfully administered by an officer of the United States District Court of Massachusetts at Boston, Massachusetts on August 12, 1922 in connection with being granted a hearing on your petition for naturalization, you knowingly and willfully made a false statement with reference to your arrest record? A. Yes."

■ The "docket slip" is clearly admissible in evidence under Rule 44(c), F.R.C.P., 28 U.S.C.A., since although it was not authenticated by publication or certificate under seal as subsection (a) of the Rule permits, it was fully authenticated by the direct testimony of the witness through whom it was introduced, and this fully satisfies the rules of evidence at common law. The point does not deserve further discussion.

And the exhibit is convincing proof that the appellant concealed his conviction in the Massachusetts Superior Court for rape in 1915 at his preliminary examination for Naturalization in 1920, for the notation therein of his two arrests for the petty offense of leaving an unlighted obstruction on a sidewalk shows that he was asked about any criminal record he might have, and the fact that only the latter arrests were noted is cogent evidence that he concealed his conviction and sentence for rape. In the face of this exhibit his testimony that he did not remember whether he was asked about criminal convictions at his preliminary examination lacks any ring of sincerity whatever.

This item of evidence alone, under the circumstances of this case, seems to us enough to sustain the conclusion that the appellant procured his naturalization by fraud.

But if further support is required for the conclusion reached by the court below it is to be found in the statement given by the appellant to the officer of the United States Immigration and Naturalization Service on June 2, 1945, from which we have quoted, for that statement not only indicates that the appellant fraudulently concealed his conviction for rape at his preliminary examination, but it also provides a basis for the finding that at the hearing in the court below on his petition for naturalization the appellant fraudulently concealed not only this conviction but also his conviction for carrying a loaded revolver. In fact on its face this statement conclusively establishes the Government's entire case. But the appellant contends that his statement should not be given any probative force whatever for the reason that the answers attributed to him therein could not have been his own. He says that his formal education terminated with the second grade in Italy so that he could not have understood the phraseology of the long and complicated questions

asked him, and that, even if he had, he could not have answered them as intelligibly and in as good English as the statement indicates for his testimony at the trial was given in poor and broken English as the record clearly attests. And as collateral support for this contention, his counsel called the stenographer who took the appellant's statement to the stand to testify that she had destroyed the shorthand notes from which she had transcribed the statement, and so could not positively verify the accuracy of her transcription.

It is true that the only evidence in the record is that the appellant's schooling stopped with the second grade as alleged, and it is also true that the record indicates that at the trial the appellant not only spoke poor and broken English but that he also apparently failed to understand even relatively simple questions. On the other hand the Government put the officer of the Immigration and Naturalization Service who conducted the interview on the stand who testified that the appellant gave his statement voluntarily after being warned as to his rights and told that it might be used against him in subsequent proceedings, and that after the statement was transcribed, he and the appellant read it over together and the latter, after correcting it in a few minor details, signed it. And there is the testimony of the stenographer that she remembered taking the appellant's statement, that she took down all that was said at the interview accurately in shorthand, and that she accurately transcribed her notes.

Under these circumstances the appellant's contention that his statement lacks probative force presents the question whether the appellant's actual capacities and capabilities are more accurately reflected in his purported statement or in his testimony at the trial. And a highly important factor in the decision of this question is the appellant's demeanor on the stand which the court below had an opportunity to observe, but we have not. Thus it seems peculiarly appropriate for us to accept the view of the trial court that the statement is entitled to credence in spite of the appellant's apparent lack of facility on the stand.

And we do not read the decisions of the Supreme Court in recent denaturalization cases as necessarily precluding us from adopting the trial court's view as to the probative value of the statement. That is to say, we do not read the decisions of the Supreme Court adverted to, which we have already cited herein, as broadly laying down the general rule that in all denaturalization cases the findings of the trial court as to all questions of fact of every kind, even though supported by credible evidence, are to be given no finality on appeal, but instead that it is the duty of appellate courts to try these cases de novo on a cold record. See the dissenting opinion of Chief Justice Stone in Schneiderman v. United States, supra, 320 U.S. at page 170, 63 S.Ct. 1333, 87 L.Ed. 1796. We read them as clearly requiring a higher standard of proof in denaturalization cases, a standard comparable to that required in criminal cases, than is required in other cases of a civil nature, and also as requiring appellate courts to examine the evidence to see if it meets this high standard. And in addition we interpret them as requiring appellate courts to make their own findings of ultimate facts, at least in cases, unlike the one at bar, where a decision cannot "escape broadly social judgments—judgments lying close to opinion regarding the whole nature of our Government and the duties and immunities of citizenship." Baumgartner v. United States, supra, 322 U.S. at page 671, 64 S.Ct. 1240, 88 L.Ed. 1525. But we do not interpret them as authorizing appellate courts to make independent findings of evidentiary facts of an objective nature when the credibility of a witness is an important factor in reaching a decision. However, even if we interpret the decisions too narrowly and the provisions of Rule 52(a), F.R.C.P., are inapplicable generally in all denaturalization proceedings, we nevertheless think the judgment of the court below should be affirmed for we are ourselves convinced on the record that the Government has proved its charge that the appellant fraudulently obtained his citizenship by evidence which is

"clear, unequivocal and convincing", and "which does not leave the issue in doubt."

The judgment of the District Court is affirmed.