UNITED STATES of America,
Plaintiff-Appellee,

v.

James J. MATLES, Defendant-Appellant.

No. 250, Docket 24435.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1957.

Decided June 10, 1957.

See, also, 150 F.Supp. 85, 115 F. Supp. 261, 19 F.R.D. 319.

Frank J. Donner, of Donner, Kinoy & Perlin, New York City (Samuel Gruber, Stamford, Conn., and Arthur Kinoy and Marshall Perlin, of Donner, Kinoy & Perlin, New York City, on the brief), for defendant-appellant.

Leonard P. Moore, U. S. Atty., E.D. N.Y., Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., and Howard B. Gliedman, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

This is an appeal from an order punishing a defendant in a denaturalization action who refused to obey a district court order directing him to be sworn to give his oral deposition before trial. Three issues are presented: (1) whether denaturalization proceedings are invalid if the affidavit of good cause required by 8 U.S.C. § 1451(a) is filed subsequent to the complaint; (2) whether such affidavits must be based on personal knowledge of the affiant; (3) whether denaturalization proceedings are sufficiently criminal in their nature to permit the defendant to refuse to take the stand on grounds of self-crimination.

The action was instituted on December 16, 1952, to vacate, cancel, and set aside a certificate and order of naturalization granted the defendant in 1934; a verified complaint was filed, but no affidavit of good cause. On May 15, 1953, the defendant moved to dismiss the complaint for want of such an affidavit; and on September 16, 1953, by stipulation the Government filed an amended complaint accompanied by the affidavit of Reuben Speiser, verified on November 26, 1952. The affiant, an attorney

in the Department of Justice, swore that he had access to the official records of the Immigration and Naturalization Service, from which it appeared that the defendant at the time of his naturalization in 1934 had sworn that he believed in the form of government of the United States and was not associated with any organization that advocated revolution; that he would renounce forever all allegiance to any foreign state; and that he would bear true faith and allegiance to the United States. The records further showed—so it continued —that he was a member of the Communist Party from 1929 until the present time; that he and the Party promoted the political activities of the U. S. S. R. and advocated violent revolution, assassination of government officers, unlawful destruction of property, and sabotage. Finally it was alleged that the defendant at all times since 1929 bore allegiance to the Soviet Union and that his false statements were intentional and deliberate.

On September 23, 1953, the defendant's motion to dismiss the complaint was denied. D.C.E.D.N.Y., 115 F.Supp. 261. In the summer of 1956 the Government sought to take the defendant's deposition pursuant to F.R.C.P., rule 26. After the defendant's motion to vacate notice of his examination was denied he appeared for examination, but refused to be sworn. He was then taken before the district court, which directed that he be sworn; and he again refused to take the oath. An order to show cause why he should not be punished for contempt was then issued and he was found guilty of contempt and sentenced to three months' imprisonment, which was stayed for this appeal.

■■ *First.* The requirement of an affidavit first came into our law in § 15 of the Act of June 29, 1906, 34 Stat. 596, 601, and now appears without substantial change in 8 U.S.C. (Supp. III) § 1451(a) thus: "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings" for denaturalization, etc. The defendant claims that the affidavit of good cause is a jurisdictional prerequisite to a denaturalization proceeding and that a proceeding begun without one must be dismissed and cannot be cured by its subsequent filing. For this proposition he cites the recent Supreme Court decision in United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964. There a denaturalization proceeding was commenced without filing an affidavit, and the district court ordered the complaint dismissed unless the Government filed the affidavit within 60 days. As this was not done the complaint was dismissed. D.C.S.D.N.Y., 125 F.Supp. 551. We affirmed the district court, 2 Cir., 221 F.2d 805, and were in turn affirmed by the Supreme Court.

In the Zucca case the Government refused to amend its complaint and file the required affidavit when given the opportunity by the district court; instead it argued that filing is not a prerequisite to maintaining a denaturalization proceeding. In the present case the Government was again given an opportunity to file its affidavit belatedly, but this time it took advantage of the offer. The defendant's attorneys had stipulated: "Service of a copy of the amended complaint herein is admitted and the amended complaint is and shall be deemed to be substituted for the original complaint." To this complaint a copy of the previously executed affidavit was attached as an exhibit. The sole question on this branch of the case is whether the trial judge erred in allowing such delayed filing, and whether he should have insisted on the initiation of a new action by a new service of process. This issue is not settled in the Zucca case and has been much mooted by district judges.[1]

---

[1]. Prior to United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964, the only two district judges who considered the argument now made by the defendant rejected it. Dawson, J., in United States v. Costello, D.C.S.D.N.Y., 142 F.Supp. 325; Inch, J., in United States v. Lucchese, D.C.E.D.N.Y., Civ. No. 13052, Nov.

Denaturalization proceedings are civil actions subject to the Federal Rules of Civil Procedure under which the initiation of the suit has dwindled in significance as a decisive event. For the freedom of amendment under, e.g., F.R. 15 (a) and (b) permits what is essentially a new suit to be instituted by a shift during the course of litigation from one claim to another.[2] So in the classic case of Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520, we actually allowed the substitution of a new unrelated plaintff for the one who could not show federal jurisdiction. See also Bowles v. J. J. Schmitt & Co., 2 Cir., 170 F.2d 617, 621. In this case, where the action was technically commenced in 1952, and the amended complaint and affidavit appeared in 1953, the action never got under way in any real sense, even for the taking of depositions, until the summer of 1956—three years after the affidavit was formally filed. We see no gain to anyone in requiring a departure from the Federal Rules here to require a new service of process by the marshal to allow the court and parties to look at this affidavit which has been before them so long.

Several references—actually five in number—in United States v. Zucca, supra, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964, to the affidavit as a prerequisite to "maintaining" a denaturalization suit are quite in accord with this analysis. Only at the very end of the opinion is there a single sentence calling the affidavit a prerequisite to the "initiation" of such proceedings. We cannot believe this limited variation of expression was intended to nullify the effect of the several earlier precise statements and to commit the Court to so meaningless a formality as a second service of process here. It is to be noted that the lower court opinion here affirmed was one dismissing only when the Government failed to obey the command that it file the affidavit within 60 days.

■ *Second.* Defendant attacks the sufficiency of the affidavit as filed by the Department attorney. As noted above, this set forth at considerable length the grounds of attack the Government planned upon defendant's naturalization and referred to government records to prove them. Thus it gave the defendant notice of the nature of the case he must meet. But his substantial contention is that the affidavit must be made by someone with knowledge. This means obviously a disclosure of evidence and—to judge by the trial tactics in the criminal prosecutions—of the informers who must be relied on for proof of Party membership. There is nothing in the wording of the statute to suggest so extensive a requirement. If Congress in 1906 had desired the Government thus to prove its case in advance, it would seem that it would have so said, and not contented itself in calling for a good cause affidavit of a nature similar to a citizen's complaint as a basis for a criminal information. True, the Attorney General and the immigration officers have wide pow-

28, 1955. After the Supreme Court's opinion was published two district judges accepted defendant's argument, Inch, J., in United States v. Lucchese, supra, Oct. 15, 1956, and now pending on appeal [see 247 F.2d 123]; Harrison, J., in United States v. Diamond, D.C.S.D.Cal., Civ. No. 17412-BH, July 26, 1956, while six district judges rejected it, Dimock, J., in United States v. Costello, D.C.S.D.N.Y., 142 F.Supp. 290; Carter, J., in United States v. Celia Feller Miller, D.C.N.D. Cal., May 31, 1956 [see opinion on renewed motion in D.C.N.D.Cal., 152 F. Supp. 27]; Edelstein, J., in United States v. Pellegrino, D.C.S.D.N.Y., Civ.

No. 93–366. Oct. 11, 1956; Koscinski, J., in United States v. Kiros, D.C. E.D.Mich., 149 F.Supp. 730; Anderson, J., in United States v. Kaplan, D.C.Conn., 150 F.Supp. 577; and Abruzzo, J., in the present case.

2. Substantive law may occasionally attach weight to the commencement of suit, as in the application of statutes of limitations; but here, too, state law governing in the federal courts may make some other time, e. g., that of service of process, more vital. See Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

ers of investigation under § 235(a) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 198, and see United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 100 L.Ed. 185. But it does not seem normal for the Government to show its details of proof in a preliminary good cause affidavit, and we do not see a sound purpose to cause us to read such a requirement into the modest statutory provisions. We are quite in favor of enforcing the statutory provisions to insure good faith in these prosecutions with such drastic consequences; indeed, it was this court's decision in United States v. Zucca, supra, 2 Cir., 221 F.2d 805, so holding, which was affirmed by the Supreme Court. But we fail to see how disclosure of the informer's name at this time will aid the statutory purpose as we conceive it.

Nor do we see anything in the Zucca opinion which states a different requirement. Of course it is true that the vigorous dissent tries naturally to put the strongest interpretation on what the majority is requiring; but in so doing, it has to quote and rely on the *respondent's* interpretation, 351 U.S. 91, 102, 76 S.Ct. 671, 100 L.Ed. 964. The only approach in the majority opinion is the observation quite justified in the modern law of pleading, 351 U.S. 91, 98, 99, 76 S.Ct. 671, 676: "The complaint, under modern practice, is required merely to allege ultimate facts while the affidavit must set forth evidentiary matters showing good cause for cancellation of citizenship." Actually the Zucca complaint did consist of allegations of ultimate fact in pleading form. The affidavit here, though it did deal with the same subject matter, referred to the evidence in its records of concealed Communist Party membership, although it gave no names of witnesses. That this is sufficient has been the interpretation of the cases since the Zucca decision, Nowak v. United States, 6 Cir., 238 F.2d 282, certiorari granted 353 U.S. 922, 77 S.Ct. 679, 1 L.Ed.2d 719; United States v. Costello, D.C.S.D.N.Y., 142 F. Supp. 290; United States v. Chandler,

D.C.Md., 142 F.Supp. 557; United States v. Kiros, D.C.E.D.Mich., 149 F.Supp. 730, as it was prior thereto, as in, e.g., Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L. Ed. 1796; Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935, certiorari denied Krause v. United States, 327 U.S. 781, 66 S.Ct. 680, 90 L.Ed. 1008.

■ *Third.* We have concluded that denaturalization proceedings are not sufficiently criminal in their nature to entitle a defendant to refuse to take the stand. My brothers are persuaded to this view by cases labeling denaturalization "civil" for slightly different purposes, e.g., Schneiderman v. United States, supra, 320 U.S. 118, 160, 63 S.Ct. 1333, 87 L.Ed. 1796; United States v. Jerome, D.C.S.D.N.Y., 16 F.R.D. 137; by the theory that the action is a rescission of a status obtained by fraud, e.g., Luria v. United States, 231 U.S. 9, 27–28, 34 S.Ct. 10, 58 L.Ed. 101; United States v. Kusche, D.C.S.D.Cal., 56 F.Supp. 201, 225; and by the fact that little prejudice attaches to the defendant's refusal to answer specific questions because denaturalization cases are tried by the court, and not to juries. See 8 Wigmore § 2268 (3d Ed. 1940). I have had more doubts because this type of case has been distinguished from ordinary civil actions for certain purposes, e.g., Schneiderman v. United States, supra, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, supra, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525; United States v. Minker, supra, 350 U.S. 179, 197, 76 S.Ct. 281, 100 L.Ed. 185 (concurring opinion of Justice Douglas); because the issues in this case are so close to those involved in a prosecution under the Smith Act, 18 U.S.C. § 2385, or the Internal Security Act, 50 U.S.C. §§ 843, 855, that identical treatment of the constitutional issue here with what would be accorded in such a prosecution seems

not unreasonable;[3] and because one who takes the stand must play a dangerous game of properly timing his claims of privilege to avoid both contempt and waiver. My brothers pertinently observe, however, that deportation, which is even more severe in its consequence, has been held to be a civil action. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Harisiades v. United States, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586.

This important issue must of course await final settlement by the Supreme Court. Meanwhile, in view of the state of the authorities, I am content to join my brothers in voting for affirmance.

Affirmed.

LUMBARD, Circuit Judge (concurring).

The issue of whether Matles may refuse to be sworn as a witness is of such importance in the administration of justice in all civil cases that I take this occasion to make my own position clear. On reason and precedent, Matles, like any other party or witness in a civil suit, and not under indictment on similar charges, may not refuse to be sworn as a witness.

It is undisputed that denaturalization is a civil proceeding, Schneiderman v. United States, 1943, 320 U.S. 118, 160, 63 S.Ct. 1333, 87 L.Ed. 1796 governed by the Federal Rules of Civil Procedure, see Chief Justice CLARK'S opinion, 247 F.2d 380. It is also clear that Rule 26(a) requires a party in such a case to submit to an examination before trial. United States v. Jerome, D.C.S.D.N.Y.1954, 16 F.R.D. 137.

Rule 1 of the Civil Rules provides that "these rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81." From an examination of Rule 81, it is apparent that Congress and the Supreme Court have already considered the extent to which denaturalization proceedings are not to be governed by the Civil Rules and have provided for only two exceptions which are specifically set forth in Rule 81(a) (6) as follows: "The provisions for service by publication and for answer in proceedings to cancel certificates of citizenship under the Act of October 14, 1940, c. 876, § 338 (54 Stat. 1158), U.S.C.Title 8, § 738, remain in effect." This specific reference indicates not only that denaturalization is a civil action within the scope of Rule 1 of the Civil Rules but also that the exceptions noted in Rule 81 (a) (6) are the only exceptions intended.[1] United States v. Jerome, supra.

In any event, this defendant, not being under indictment on charges similar to those at issue in this denaturalization proceeding, is not in a position similar to that of an accused in a criminal prosecution. While it cannot be said that the denaturalization defendant faces no dangers, they are different in nature and degree from those faced by an accused, and are such as must be faced by any defendant in a civil suit if our methods of seeking and finding the facts are to function fairly and effectively.

The danger underlying the accused's right not to take the stand and to be sworn is that a refusal by him to answer might emphasize in a particularly prejudicial way that the accused considers certain questions incriminatory and the jury may consider his refusals to answer as the equivalent of damaging answers. See 8 Wigmore § 2268 (3d ed. 1940); United States v. Scully, 2 Cir., 1955, 225 F.2d 113, 115–116, certiorari denied

---

3. Matles is here charged with present active membership in the Communist Party; promoting the public policy of the U. S. S. R.; and personally advocating political assassination, revolution, and sabotage.

1. The only other exception peculiar to denaturalization is that the complaint may not be amended to accord with the proof,

despite Civil Rule 15(b). See Schneiderman v. United States, 1943, 320 U.S. 118, 160, 63 S.Ct. 1333, 87 L.Ed. 1796. But the existence of Rule 15(b) was evidently not brought to the attention of the Court, for it was not mentioned in the opinion by Justice Murphy.

1955, 350 U.S. 897, 76 S.Ct. 156, 100 L. Ed. 788; Grunewald v. United States, 77 S.Ct. 963.

But no such prejudice attaches to the refusal to answer questions at an examination before trial in a civil case. The fact that denaturalization cases are tried by the court and not to juries, Luria v. United States, 1931, 231 U.S. 9, 27, 34 S.Ct. 10, 58 L.Ed. 101, only serves to emphasize the point.

Moreover, as in any civil action, the denaturalization defendant has notice in advance regarding the issue and the assistance of counsel at every step of the way, for every question. He can claim his privilege as to each alleged incriminatory question as it is asked. This is all the protection which is necessary.

I do not believe that the possibility of inadvertent waiver, which is reduced to a minimum where counsel is present, justifies the extension of the privilege in violation of the rights of the other party and in derogation of the fact-finding policy of the Federal Rules of Civil Procedure. No court has yet accepted or even suggested such a doctrine. Even in grand jury proceedings where the dangers of such waiver are far greater because the witness does not have the assistance of counsel in the grand jury room, the witness must still be sworn even though he might be indicted for the matters under investigation. See O'Connell v. United States, 2 Cir., 1930, 40 F.2d 201, 205; Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566, 578–579; cf. Grunewald v. United States, supra, 77 S.Ct. at page 982; see also Scully v. United States, supra, which holds that the possibility that the witness may later be indicted does not require that he be warned of his Fifth Amendment rights when called as a witness before a grand jury.

Furthermore, fear of inadvertent waiver would justify a refusal to be sworn in any civil case where the main charge could also be ground for criminal prosecution, e.g., a suit in negligence where the charge is reckless or drunken driving or a suit for conversion or embezzlement. In each case it could be argued that most questions could be incriminatory and that there is a danger that a party may waive his privilege and be forced to answer a series of incriminatory questions. I doubt that anyone would be willing to allow such a frustration of the fact-finding process in these other contexts, but the logic of such reasoning is not limited to denaturalization—it would extend to any civil action where the main charges could be the basis of a criminal prosecution. I find it hard to believe that this far reaching result is at all necessary, especially in view of the defendant's existing protection.

Finally, we cannot say in advance of the examination whether any non-incriminatory questions may be asked. Rule 26 (b) of the Federal Rules of Civil Procedure was designed to permit broad and searching examination of all matters which would assist a party in discovering evidence. Thus Rule 26(b) provides:

"Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

This language is clearly designed to be broad enough to cover almost anything that will help the examining party to discover any leads to evidence. In practice the district court is not asked to rule on the availability of the privilege to refuse

to answer until a number of questions have been asked and refused. The district court is thus in a position to determine the incriminatory nature of the question or questions in the context of the whole case and the nature of the information sought to be elicited. Until that moment, it cannot be known which of the many possible questions will require answers which may be incriminatory. Thus it seems to me that in all civil cases as long as it is possible that one question may be answered, the spirit of the Federal Rules requires that the witness be sworn and the district court must make the determination whether particular questions must be answered, and not the party himself. See United States v. Jerome, supra.

Without the power to seek and find the facts through the swearing and questioning of witnesses, the administration of justice would be seriously obstructed. This most fundamental power, as recognized and developed through our Federal Rules of Civil Procedure, should not be diminished or frustrated unless and until it is clear to the district court that the answer to a particular question may incriminate the witness. Clearly, we do not reach that point when the party is called upon to take the oath; we reach it only when the court can judge the possible effect of a particular question.

WATERMAN, Circuit Judge (concurring).

I concur in the result reached here. I join in the holding that the substantive nature of these proceedings is civil and that Matles may be punished for contempt if he refuses to be sworn and to take the witness stand. At this time I do not subscribe to any discussion indicating advance approval or disapproval of the use of discovery procedures ordinarily permissible in civil cases under the Rules of Civil Procedure. Questions raised by adjective maneuvers and procedures can abide the event.