**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Frank COSTELLO, Defendant-Appellee.**

**No. 338, Docket 24470.**

United States Court of Appeals Second Circuit.

Argued June 11, 1957.

Decided July 22, 1957.

See also 2 Cir., 222 F.2d 656.

Edwin J. Wesely, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., and Harold J. Raby, Asst. U. S. Atty., New York City, on the brief), for plaintiff-appellant.

Edward Bennett Williams, Washington, D. C. (Agnes A. Neill, Washington, D. C., and Morris Shilensky, of Hays, St. John, Abramson & Heilbron, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and CHASE and HINCKS, Circuit Judges.

CLARK, Chief Judge.

The United States of America appeals from a decision, D.C.S.D.N.Y., 145 F. Supp. 892, dismissing without prejudice its action for the denaturalization of defendant, Frank Costello, alleging fraud and illegality in its procurement in 1925. In taking this action during the course of the trial, Judge Palmieri found the government's case permeated with the fruit of illegal wire taps and held that it would not be feasible to attempt to separate the legal and illegal evidence so as possibly to save the case. Accordingly in the exercise of discretion and over plaintiff's objection, he dismissed the case without prejudice and upon the defendant's stipulating to waive the statute of limitations. We are constrained to hold that this summary step was not warranted by the state of the record and that the action must be remanded for the reaching of some more definite conclusion.

The complaint herein alleged that the defendant's petition for naturalization, filed May 1, 1925, was fraudulent in that it denied or concealed the facts that the applicant had violated the National Prohibition Act, failed to pay state and federal income tax due from him, conspired to bribe Coast Guard and Prohibition agents, engaged in large-scale gambling operations, used certain aliases, and been convicted in 1915 for carrying a concealed weapon. On the first day of trial the defendant moved to dismiss the affidavit of good cause, supplied by plaintiff to fulfill the requirement of 8 U.S.C. § 1451(a); and he submitted various papers to show that it was based on illegal wire taps. The moving papers included extracts from the defendant's testimony before a New York County Grand Jury in 1943; before a referee appointed by the New York State Appel-

late Division, First Department, in 1943 in regard to disciplinary proceedings against Attorney Thomas A. Aurelio; and before the Special (Kefauver) Committee of the United States Senate to Investigate Organized Crime, which held hearings in 1950 and 1951. These transcripts suggested that state officers had indeed tapped the defendant's phone in 1943, as a result of which he testified before the three bodies to facts which he might not otherwise have revealed. Also included in the moving papers was a deposition of Maurice A. Roberts, an attorney in the Department of Justice who had executed the government's affidavit of good cause, in which he stated that he had based the affidavit on parts of the three transcripts just described and also the central office file of the Immigration and Naturalization Service. Government counsel at that time refused to permit the court or defendant's counsel to see the fourth source on the ground that it was confidential.

The trial judge took the motion to dismiss the affidavit of good cause under advisement, adjuring government counsel to tell him whenever evidence was offered at trial which stemmed directly or indirectly from intercepted communications. While the judge was considering the motion, the trial went forward. The crisis came on the third day of trial when the defendant, who was being examined concerning a 1926 bootlegging prosecution, submitted an affidavit alleging that his phone had been tapped in 1925 and 1926, and that the 1926 proceedings were the result of those taps. The government attorney conceded that a witness had told him of having heard that there had been tapping of the defendant's telephone; but he denied the existence of taps in 1925 or 1926 and contended that neither the affidavit of good cause nor the government's proof was the fruit of such taps.

The judge suspended the trial and, in chambers with counsel, examined the three transcripts previously submitted. He found—as he explains, 145 F.Supp. 892, 895, 896, note 13—that these contained indications of extensive use of wire taps covering a period of many years and beginning in the 1920's, a belief which he had confirmed through telephone conversations with two of the former participants in these matters. Accordingly the following morning he announced his decision that it was virtually impossible for him to determine what evidence was admissible and what was not, and that it was not feasible to take time to separate the parts. So he stated his intent to grant the defendant's motion to dismiss on condition that it be without prejudice and that the defendant stipulate (as was later done) to raise no objection to a retrial of these issues.

Government counsel promptly objected to the court's refusal to grant an adjournment for a hearing where the plaintiff could show that there had been no taps in 1925 or 1926. He also attempted to offer in evidence at that time some exhibits of statements made by the defendant in 1938 and 1939, claiming these as the source of the government's information and pointing out that they existed prior to the 1943 taps. The exhibits were marked for identification only. Government counsel remarked for the record that the court was not shown the confidential source upon which the affidavit of good cause was partly based only because the Assistant United States Attorney was under interdiction by the Attorney General not to produce it; that he was required by his superior to ask the court for a reasonable adjournment in order to get the Attorney General's permission to disclose it; that the adjournment had been sought the previous day for one day and was denied. The court again denied the adjournment, explaining that "[y]ou should have had full authority to deal with the papers in this case before you started the trial and not ask me to interrupt the trial until you get more authority." 145 F. Supp. 892, 897, note 22. The district court's opinion cited above, filed a month later, reiterates these objections and conclusions with some further particularity.

■ On this record we feel that we must reverse. Even if we assume that the government's affidavit of good cause was invalid as the fruit of illegal interceptions, the government should have been permitted to file a new affidavit, rather than having its case dismissed. United States v. Matles, 2 Cir., 247 F.2d 378; United States v. Lucchese, 2 Cir., 247 F.2d 123. True, the affidavit is attacked here at a much later stage of the proceedings than in those cases; but it is foolish to allow such a pleading deficiency to cause a dismissal and enormous waste motion without requiring some showing that it prejudiced a litigant in some way. No showing of prejudice was attempted here.

■ Beyond this we think the judge should have made some test of the government's ability to meet its burden of proof with untainted evidence. Assuming for the moment that the fruits of the 1925 and 1943 taps would have been inadmissible in a federal court, it did not follow that the complaint should have been dismissed. Rather, the government should have been given a fair opportunity to demonstrate that it had sufficient untainted evidence. The mere fact that a brief continuance was necessary to make such a showing was no reason for dismissal. This was not a jury case where interruption would be inconvenient; nor did the record show that the plaintiff was remiss in preparing for trial. If such prompt demonstration of the government's untainted evidence was necessary, the judge could have dispensed with a trial-type hearing and given a peremptory order for proof by affidavit. Since no necessity for dismissal appears, the order below cannot be sustained on the discretionary grounds given in the district court's opinion.

■ We have also considered whether the decision can be sustained on the ground that, as shown by the record, the government's evidence was by and large inadmissible. We hold that no such demonstration was made. Wire tapping in 1925 and 1926 allegedly produced the defendant's prosecution in the latter year. The fruit of such tapping was spread on the public record at the open trial for bootlegging. We do not construe § 605 of the Communications Act of 1934, 47 U.S.C. § 605, to render it a crime to republish information which was lawfully intercepted and divulged once before prior to that Act's passage. The fruit of any 1925–26 taps is admissible. The wire taps in 1943 were done by state officers without FBI connivance. They are admissible in a federal court; and the fruit of them, if similarly obtained without federal connivance, is also admissible. United States v. Benanti, 2 Cir., 244 F.2d 389.

■ Quite without merit is a final claim of defendant of some sort of estoppel against the United States because the Assistant United States Attorney in the course of argument below conceded that wire-tap evidence procured either by federal or state officers after the enactment of the statute would be inadmissible. Not thus is the public interest to be prejudiced. That the United States, which represents us all, is not to be estopped by agents who cannot forecast just what we are to say or hold, as in United States v. Benanti, supra, 2 Cir., 244 F.2d 389, is clear; we sit to do substantial justice under the law, whether or not counsel may have correctly advised us or our district colleagues on what we conceive that law to be.

Reversed and remanded.