**UNITED STATES of America,
Appellee,**

v.

**Frank COSTELLO, Appellant.**

**No. 58, Docket 25690.**

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1959.

Decided Feb. 17, 1960.

Edward Bennett Williams, Washington, D. C. (Agnes A. Neill and Vincent J. Fuller, Washington, D. C., Morris Shilensky, New York City, and Hays, St. John, Abramson & Heilbron, New York City, on the brief), for appellant.

Morton S. Robson, Asst. U. S. Atty., Southern District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., S. D. N. Y., New York City, on the brief), for appellee.

Before MAGRUDER, MOORE and FRIENDLY, Circuit Judges.

MAGRUDER, Circuit Judge.

■ This is another of those troublesome denaturalization cases, instituted by the government in an effort to have the court cancel a certificate of naturalization issued over thirty years ago. The proceeding is brought pursuant to § 340 (a) of the Immigration and Nationality Act of 1952, as amended, 68 Stat. 1232. This statute contains no provision for limitations, nor is there any other federal statute applicable to the case. And, as Hughes, C. J., said in United States v. Summerlin, 1940, 310 U.S. 414, 416,

60 S.Ct. 1019, 1020, 84 L.Ed. 1283: "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."

■■ It is impossible to say that the statutory provisions for the issuance by the court of naturalization certificates, under certain prescribed conditions, do not constitute a proper judicial function. Tutun v. United States, 1926, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738. And despite what may seem to be the harshness of the result, it seems impossible to say that the Congress cannot constitutionally provide a proceeding for the cancellation of a certificate obtained by fraud or concealment. Knauer v. United States, 1946, 328 U.S. 654, 673, 66 S.Ct. 1304, 90 L.Ed. 1500. It was so provided way back in the Act of 1906 which, in § 15 thereof, vested jurisdiction in the district courts of suits by the United States Attorney on behalf of the United States "for the purpose of setting aside and canceling a certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured." 34 Stat. 601. See Johannessen v. United States, 1912, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066. Such provision for denaturalization was carried forward by Congress into § 338 (a) of the Nationality Act of 1940 (54 Stat. 1158, 1159). In the Immigration and Nationality Act passed in 1952, denaturalization proceedings were also provided for, but the Congress struck out the earlier provision for cancellation of a certificate that had been illegally issued, and confined cancellation to cases where the certificate had been procured "by concealment of a material fact or by willful misrepresentation." 66 Stat. 260. This provision was reenacted by the Congress in 1954. 68 Stat. 1232.

The Supreme Court has never told us that a denaturalization proceeding partakes of the character of a criminal proceeding. Indeed, in the Johannessen case, supra, the Court upheld the constitutional validity of a provision in § 15 of the Act of 1906 to the effect that the de-naturalization provisions should apply not only prospectively but also "to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws." 34 Stat. 601. In this connection the Court said (225 U.S. at page 242, 32 S.Ct. at page 617): "It is, however, settled that this prohibition is confined to laws respecting criminal punishments, and has no relation to retrospective legislation of any other description. * * * The act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges."

■ Although the Supreme Court has many times upheld a decree for the cancellation of a certificate of naturalization, it has prescribed an exacting quantum of proof as requisite to establishing a case by the government against a certificate holder. The case for cancellation must be "clear, unequivocal, and convincing," and should not leave "the issue in doubt." See Schneiderman v. United States, 1943, 320 U.S. 118, 158, 63 S.Ct. 1333, 1352, 87 L.Ed. 1796; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Knauer v. United States, supra, 1946, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500.

■ If a denaturalization case is a sort of civil proceeding, we are at a loss to see why our scope of review is not limited by the "clearly erroneous" test of the unqualified Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. If that is so, then once we are convinced that the district court was aware of and applied the proper strict standards of proof—which clearly appears in the case at bar—we ought not to upset its finding that the defendant had obtained his certificate of citizenship by fraud unless we are satisfied that such finding was "clearly erroneous." See Corrado v. United States, 6 Cir., 1955, 227 F.2d 780, 783. Of course, fraud is an internal state of mind, and it is possible that a man may give an incorrect answer to a question in

a bona fide but mistaken belief as to what the question calls for. But if an applicant for citizenship has in fact no such misapprehension as to what answer the question calls for, and consciously falsifies an answer on a material point, he is certainly guilty of fraud in the baldest sense of the term. The district court believed that Costello was guilty of this kind of fraud, and we certainly cannot say that the finding to this effect was "clearly erroneous."

On the other hand, perhaps we are wrong about our limited scope of review; and it may be that in this very special type of civil proceeding we have a broader power of review, and are under the obligation ourselves to scrutinize the evidence, to satisfy ourselves that the proof offered by the government was "clear, unequivocal, and convincing." See Baumgartner v. United States, supra, 1944, 322 U.S. 665, 670–672, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525; Brenci v. United States, 1 Cir., 1949, 175 F.2d 90; Cufari v. United States, 1 Cir., 1954, 217 F.2d 404.

Fortunately, we do not in this case have to determine what our scope of review may be in these cases, since we are here more than satisfied that the findings by the district court which will sustain a cancellation of the certificate of naturalization are the only findings possible on the evidence, and that they fulfill the strictest requirements of proof. 171 F.Supp. 10.

■ We think the district court, though it did not do so, might properly have buttressed its findings by the unfavorable inferences to be drawn from the fact that Costello chose to remain off the witness stand and to introduce no evidence in answer to the government's case indicating fraud. The matters inquired into were within Costello's peculiar knowledge. Since Costello was not a criminal defendant in the present proceedings, he had no privilege to remain silent. United States v. Matles, 2 Cir., 1957, 247 F.2d 378, reversed on other grounds, 1958, 356 U.S. 256, 78 S.Ct. 712, 2 L.Ed.2d 741. · See also United States ex rel. Vajtauer v. Commissioner, 1927, 273 U.S. 103, 47 S.Ct. 302, 71 L. Ed. 560.

■ The government's complaint in the present case was filed May 1, 1958. In compliance with the procedural requirement of § 340(a), as amended, the complaint was accompanied by affidavits showing "good cause" for the institution of the proceeding. 68 Stat. 1232. The request for cancellation of the certificate of naturalization was based upon various allegations of fraud and concealment. We mean to be guided by the words of the Supreme Court in the Schneiderman case, supra, 320 U.S. at page 160, 63 S. Ct. at page 1353: "A denaturalization suit is not a criminal proceeding. But neither is it an ordinary civil action since it involves an important adjudication of status. Consequently we think the Government should be limited, as in a criminal proceeding, to the matters charged in its complaint."

Some of the allegations of fact contained in the complaint were not accepted by the district court as sufficiently established pursuant to the strict requirements of proof imposed upon the government. Though the government now urges us to examine the state of the evidence in these regards, we do not propose to go beyond the findings of fact by the district court. That court based its decree upon findings with reference to two of the issues raised by the complaint: (1) That in the preliminary form for petition for naturalization, and in testimony under oath before a naturalization examiner, and also in his petition for naturalization, Costello knowingly and willfully stated that his occupation was "real estate," whereas in truth his occupation was the illicit purchase and sale of alcoholic beverages; (2) that the defendant swore in his oath of allegiance, on September 10, 1925, that "I will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic; and that I will bear true faith and allegiance to the same." [171 F.Supp. 16.] This was said to be a known

falsehood because the defendant was actually engaged at the time in a course of activity which flouted the Constitution and was designed to violate the laws of the United States.

It was established by the United States, from Costello's own mouth, that he was at the crucial dates engaged in bootlegging activities. He gave a statement to Special Agent Sullivan on July 24, 1938, to the effect that he was involved in the liquor business from 1923 or 1924 until a year or two before repeal of the Eighteenth Amendment. In answer to questions by the district attorney in a proceeding before a New York County grand jury in 1943, Costello admitted that he got large sums of money from importing whisky during prohibition days. He admitted that he had reported to the state taxing authorities that for the years 1919 to 1932 his income had totaled $305,000, most of it made in the bootlegging business. If corroboration of these statements is required in the present case, such corroboration is amply found in the testimony of the witnesses Kessler, Kelly and Coffey. The evidence is clear beyond any doubt that during prohibition days Costello's major activity, both in terms of time spent and revenue obtained, was bootlegging.

In his preliminary form for petition for naturalization, in answer to a question requiring him to put down his "present occupation," he answered "real estate." He gave a similar answer in his petition for naturalization.

■ Of course one has to begin a new occupation at some point of time, and at the outset there necessarily is not a great deal of evidence as to such activity. The evidence relating to Costello's real estate dealings is at best scanty. The government made a check of the real estate records in four counties of Greater New York, which check revealed that Koslo Realty Co., Inc., was organized on December 1, 1924; that some time prior to May 1, 1925, Costello was associated with this corporation. Koslo Realty Co. purchased a piece of property and sold the same on June 22, 1925. Costello later became president of the corporation. How much activity Costello had to expend in this capacity does not appear, nor does it appear whether or not Koslo Realty Co. was engaged in other real estate transactions in other parts of the country not covered by the government's spot check. If there was any further evidence along this line, it would be peculiarly within the knowledge of Costello, and his failure to produce evidence of such activity warrants the inference that there was none such.

■ We think it obvious that a worldly-wise man such as Costello must have realized that his real occupation was bootlegging and that his dabbling in real estate was but "dust in the eyes" to conceal his real occupation. As the district judge stated: "If a man in that situation had been honest when asked what his occupation was, would he have answered 'real estate'? If he had told the truth he probably would not have been naturalized, but this is no excuse for his using fraud and deceit to secure his naturalization." The term "occupation," the court said, "would commonly be understood to refer to income producing activity to which a person devotes the major portion of his time and from which he derives the greater portion of his income." 171 F.Supp. at page 18. Surely it is conceivable that an applicant might believe that the answer called for no more than a disclosure of some "legal occupation." There is no evidence in the record that Costello so believed. If he had given a truthful answer, it is probable that the court would not readily have accepted his assertion of being possessed of "good moral character," and he might not have received his certificate of naturalization. As the district court said: "When he answered that his occupation was real estate he was giving a false and misleading answer and was therefore engaging in a willful misrepresentation in order to secure his naturalization certificate." 171 F.Supp. at page 18.

The district court also based its holding upon a finding that Costello falsely

swore that he would "support and defend the Constitution" and "bear true faith and allegiance to the same."

Costello also swore that he was "attached to the principles of the Constitution." Just what this phrase might mean as used in the Nationality Act poses a question of some difficulty. See Stasiukevich v. Nicolls, 1 Cir., 1948, 168 F.2d 474, 477. We don't believe that the phrase would require a person to believe in the soundness of the Eighteenth Amendment; but at least it would seem to require that the applicant should support an existing provision of the Constitution unless and until it is repealed in an orderly way as provided in Art. V of the Constitution. Therefore, if Costello was at the time engaged in violation of the Eighteenth Amendment and of the Volstead Law, 41 Stat. 305, it seems hard to say that he was "attached to the principles of the Constitution."

But the answer to all the foregoing is that the complaint in the present case does not charge that Costello swore falsely in affirming that he was "attached to the principles of the Constitution."

We are not satisfied that the district court was correct in ruling that the oath to "support and defend the Constitution and laws of the United States" means the same as "attached to the principles of the Constitution." It may be urged that the oath which Costello was charged with having violated was merely a political oath calling for a repudiation of allegiance to King Victor Emmanuel III and a statement of allegiance to the United States. We do not have to pass finally on this alleged fraud in the oath, since the first allegation, with reference to the statement of Costello's occupation, is amply supported so as to sustain the charge of fraud and to require us to uphold the decree of denaturalization.

There is only one further point made by appellant that deserves some extended comment. It has to do with the validity of the affirmative defense, specifically pleaded here, that "the complaint is barred under principles of res judicata." We think there is nothing to the point; in fact, we cannot see how any court could accept the argument advanced by appellant except upon an invincible determination to frustrate finally what the court might regard as an undesirable effort by the government to accomplish the cancellation of an old certificate of naturalization.

This is not the first effort by the government to obtain the cancellation of Costello's certificate. On October 22, 1952, the district attorney filed a denaturalization complaint against Costello under § 338 of the Nationality Act of 1940 (54 Stat. 1158). The allegations of fraud were about the same as in the present complaint. But as then permitted by law, cancellation of the certificate of naturalization was also sought on the ground that the certificate was "illegally procured"; that is to say, that the conditions precedent to naturalization, a "good moral character" and an attachment "to the principles of the Constitution," did not in fact exist. As we have previously stated, the latter ground of cancellation was omitted from the present Act.

Though the United States Attorney filed an affidavit of "good cause" prior to the trial of that earlier action, he failed to submit this affidavit simultaneously with the filing of the complaint. The district court entered an order dismissing the complaint "without prejudice." D.C.S.D.N.Y.1956, 145 F.Supp. 892. The court of appeals reversed, in an opinion having to do solely with so-called "wire tap" evidence. United States v. Costello, 2 Cir., 1957, 247 F.2d 384. Upon certiorari the Supreme Court, in a one-paragraph *per curiam* opinion, reversed the judgment of the court of appeals upon a ground not theretofore considered by that court, namely, that an affidavit showing good cause is a prerequisite to the initiation of denaturalization proceedings and must be filed along with the complaint when the proceedings are instituted, citing only United States v. Zucca, 1956, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964. Accordingly the Supreme Court remanded

the case to the district court with directions to dismiss the complaint. 1958, Costello v. United States, 356 U.S. 256, 78 S.Ct. 714, 2 L.Ed.2d 741.

When the case got back to the district court, since nothing was said in the Supreme Court mandate about whether the dismissal should be with or without prejudice, the district judge considered that he was bound by the terms of the mandate merely to dismiss the complaint.

There may have been an error by the district court in its refusal to add the words, proposed by the government, that the dismissal of the complaint should be "without prejudice." However, this error, if it was an error, could have been corrected on appeal, and no appeal was taken from the district court's order of dismissal.

 In Rule 41(b) of the Federal Rules of Civil Procedure it is provided as follows: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

Rule 41(b) does not state what the effect of a prior judgment on the merits is, but if the dismissal of the earlier complaint was really a judgment on the merits we suppose that that would preclude the government as well as a private litigant from filing another complaint based upon the same cause of action, under principles of *res judicata.*

The district court was persuaded by the government's argument that Rule 41 (b) had no application because the dismissal was "for lack of jurisdiction" within the meaning of the rule.

No doubt the word "jurisdiction" is a somewhat slippery one, susceptible of various meanings. In holding, as we do, that Rule 41(b) has no application, we prefer not to say that the district court lacked "jurisdiction" to determine the denaturalization complaint despite the lack of a "procedural prerequisite," namely, the filing of an affidavit showing "good cause" simultaneously with the filing of the complaint. Because the phrase "lack of jurisdiction" is used in immediate conjunction with the phrase "for improper venue," it would be plausible to argue that the word "jurisdiction" is used in the rule in its usual restricted sense. See Title v. United States, 9 Cir., 1959, 263 F.2d 28.

In striking out the words "without prejudice," as proposed by the government, the district court exercised no discretion, as contemplated in the rule, but merely conceived that it was bound by the mandate of the Supreme Court to dismiss the complaint without saying anything about whether it should be with or without prejudice.

The district court did not determine that its dismissal should be regarded as a judgment on the merits. It made no findings as provided in the sentence of Rule 41(b) saying that, "If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)." And it is obvious that the Supreme Court, in directing such dismissal, did not suppose that it was directing a determination on the merits, which would preclude the government from starting over again, with this particular statutory "procedural prerequisite" duly observed. In the only case cited by the Supreme Court in its brief *per curiam* opinion, United States v. Zucca, supra, 1956, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964, the district court had dismissed a complaint for denaturalization, without prejudice to the government's right to institute an action to denaturalize the respondent upon filing an affidavit of good cause. D.C. S.D.N.Y.1954, 125 F.Supp. 551. The court of appeals affirmed the dismissal (2 Cir., 1955, 221 F.2d 805) and upon certiorari the Supreme Court in its turn affirmed the judgment of the court of appeals. 1956, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964. The Supreme Court thought that the district court had correctly dismissed the proceedings because of the failure of the government to file the required affidavit at the time the

complaint was filed. But note, that such dismissal had been without prejudice.

It seems to us that Rule 41(b) should be interpreted as applying only to cases in which the trial judge is exercising some discretion and is not merely acting mechanically pursuant to the direction of a superior court. There must be a rule that a bare "dismissal" is to be interpreted as either with or without prejudice, and 41(b) provides this rule in all cases where the district court has a real discretion in the matter. But there is obviously no such need where the trial court's disposition of the case has been predetermined by a superior court. It would be a violation of the intention of all the courts concerned if the dismissal of the earlier complaint were held in this case to be a judgment on the merits. Appellant's arguments exalt pure technicalities to a wholly unwarranted degree. And see Restatement, Judgments § 49 (1942).

A judgment will be entered affirming the judgment of the district court.